**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

_____

EGENERA, INC.,                                  )
                                                )
Plaintiff,                                      )            Case No._____
                                                )
v.                                              )            **JURY TRIAL DEMANDED**
                                                )
CISCO SYSTEMS, INC.                             )
                                                )
Defendant.                                      )
_____       )


## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Egenera, Inc. ("Egenera" or "Plaintiff") hereby brings this Complaint for Patent

Infringement against Cisco Systems, Inc. ("Cisco" or "Defendant") for infringement of U.S.

Patent Nos. 7,231,430 (the "'430"), 6,971,044 (the "'044"), and 7,178,059 (the "'059")

(collectively, the "Asserted Patents"). Plaintiff, on personal knowledge as to its own acts, and on

information and belief as to all others based on investigation, alleges as follows:

## SUMMARY OF THE ACTION

1.      Cisco sells information technology infrastructure and services. One of Cisco's

product lines is its Unified Computing System ("Cisco UCS"). Cisco's website currently

describes Cisco UCS in the following manner:

> Cisco Unified Computing System (Cisco UCS) is a
> groundbreaking approach to computing. It is designed for IT
> innovation and business acceleration. The product portfolio
> includes blade and rack servers, edge scale computing, converged
> infrastructure, composable infrastructure, and hyperconverged
> infrastructure solutions.

The origin of Cisco UCS is tied to pioneering work done and patented by Egenera.

1

2.     Vern Brownell led the founding of Egenera in March of 2000. Based on his experience running and managing complex data centers, Mr. Brownell came up with technology coined "Processing Area Network" ("PAN" for short). Egenera designed, developed, and brought to market PAN technology including its BladeFrame and PAN Manager products. Egenera received industry recognition and acclaim including "Best In Show" and "World Top 10 Startups to Watch" awards from industry publications and trade groups. In early 2004, Cisco expressed an interest in Egenera and its PAN technology and product. After a number of meetings in which Egenera disclosed the details of its PAN technology and the benefits flowing from it, Cisco informed Egenera that Cisco was "going in a different direction."

3.     Shortly after parting ways, Cisco began hiring Egenera employees. A few years later, Cisco released Cisco UCS. Cisco UCS uses Egenera's PAN technology and infringes Egenera's patents covering its technology. Cisco's entrance into the market with the unauthorized use of Egenera's PAN technology caused market and other damage to Egenera. Cisco continues to use Egenera's patented technology in an unauthorized manner. By its actions as described above, and as described in more detail below, Cisco has caused and continues to cause damage to Egenera's business and reputation.

## I.     PARTIES

4.     Egenera is a Delaware corporation with its primary place of business at 80 Central St., Boxborough, MA 01719. Egenera is a privately held company. Egenera was founded in Massachusetts in March of 2000 and today employs approximately 75 people. Egenera's website can be found at www.egenera.com and includes details about Egenera's business and management.

5.      Cisco is a California corporation with its primary place of business at 170 West Tasman Dr., San Jose, CA 95134. Cisco is a publicly traded company. Cisco makes, manufactures, sells, and offers to sell the Cisco UCS and related hardware, software, and components. Cisco may be served with process through its registered agent, Prentice-Hall Corporation System, Inc., 84 State St., Boston, MA 02109.

## II.      JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States, Title 35, United States Code §§ 1 *et seq*. This Court has exclusive subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

7.      This action for patent infringement involves Cisco's manufacture, use, sale, offer for sale, and/or importation into the United States of infringing systems such as Cisco UCS, alone or in conjunction with other Cisco products and services. This action for patent infringement also involves Cisco's indirect acts of infringement including active inducement and contributory infringement.

8.      Personal jurisdiction exists generally over the Defendant because it has sufficient minimum contacts with the forum as a result of business conducted within the Commonwealth of Massachusetts. Cisco, for example, has offices and employees located in the Commonwealth of Massachusetts. Personal jurisdiction also exists specifically over the Defendant because it, directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets products and services (including Cisco UCS) within the Commonwealth of Massachusetts that infringe the Asserted Patents, as described more particularly below.

9.      Venue is appropriate in the District of Massachusetts under 28 U.S.C. §§ 1391(b) and 1400(b). Egenera has been located in the Commonwealth of Massachusetts since its formation in 2000. Egenera's employees, business, and documents and potential third party witnesses (including inventors of the Asserted Patents) are found primarily within the District.

### III.      FACTUAL BACKGROUND

#### A.      Egenera started with a groundbreaking idea and grew rapidly

10.     Installing, configuring, and maintaining enterprise-class server systems can be tedious and time-consuming. This was particularly the case when servers had to be independently wired and configured; and the configurations, once complete, were static. Adding server capacity or changing the network topology often meant a wholesale replacement of existing infrastructure, or at the very least, an expensive re-wiring project. Similarly, if a server or any part of the network failed, there was no way to quickly and efficiently provision a replacement system or component. Vern Brownell encountered all of these problems during his term as a Chief Technology Officer. After eleven years in that position, with significant experience in the hurdles and obstacles of running datacenters, Mr. Brownell had some ideas for solving these problems.

11.     Mr. Brownell left Goldman Sachs, found a number of like-minded persons, and founded Egenera in March of 2000. Egenera began developing a fabric-based, converged server architecture that could be wired once, and then configured, provisioned, and reconfigured and reprovisioned by software commands rather than physical rewiring. Egenera called this new architecture a "Processing Area Network," or "PAN." Egenera's PAN technology has been adopted by the industry. Today, it may be referred to as a "converged infrastructure" and

generally refers to a group of computing resources, including processors, memory, storage, and switching connections that can be configured to create virtual networks.

12.     Egenera's first products to embody its PAN inventions were the BladeFrame and PAN Manager. The BladeFrame was a complete physical system containing a converged architecture of control nodes, blade servers, a fabric backplane, and firmware. The PAN Manager was software that enabled the BladeFrame to be configured and managed through software commands.

13.     The industry immediately recognized the value of Egenera's invention, awarding Egenera "Best of Show" at the 2001 Networld+Interop tradeshow, one of the world's premiere technology conferences. Between 2001 and 2003, Egenera filed applications with the United States Patent and Trademark Office (the "PTO") that would ultimately result in the PTO issuing the Asserted Patents. The PTO also issued Egenera a number of other related patents not currently being asserted in this case.

14.     Egenera grew quickly in the early 2000s, and received wide recognition for its successful innovations. In 2002, Egenera opened its first office in the United Kingdom and won its first major client, CSFB (Credit Suisse First Boston). Egenera became one of Networld's 2002 "World Top 10 Startups to Watch." Continuing its successes in 2003, Egenera was YankeeTek's "Innovator of the Year," opened an office in Japan and released the BladeFrame ES, a variant of the original BladeFrame product. Also in 2003, Egenera started a four-year run in the AlwaysOn "Top 100 Private Companies" list. In 2004, Egenera opened an office in Germany and won the "Best Blade Solution" award from Waters Magazine. It was also in 2004 that Cisco became interested in Egenera and/or Egenera's technology.

**B.      Cisco received detailed disclosures from Egenera about the PAN technology**

15.      Cisco sells information technology infrastructure and services globally and in the United States. In early 2004, Cisco became interested in Egenera and/or Egenera's PAN and related technologies. Egenera and Cisco entered a Mutual Non-Disclosure Agreement (the "NDA"). At that time, Cisco purchased an Egenera BladeFrame system with the PAN Manager. After Cisco signed the NDA and purchased the Egenera BladeFrame system, Cisco and Egenera met multiple times. During the meetings, Egenera provided Cisco with detailed information about its products and technology.

16.      After receiving all of Egenera's technical and product information, Cisco informed Egenera that it was "going in a different direction" and would not be purchasing or investing in the company. The direction that Cisco chose was to hire Egenera's employees and develop a competing product line based on Egenera's PAN technology that infringed on Egenera's patents.

**C.      Cisco launched UCS based on Egenera's PAN technology**

17.      Although frustrated by and disappointed in Cisco's actions, Egenera continued to grow. In 2005, Egenera released a new version of PAN Manager, and reached an OEM agreement with Fujitsu Siemens Computers. In 2006, Egenera continued to invest in its PAN technology by introducing a next generation product called BladeFrame EX and an accompanying new version of PAN Manager—earning a place in the Red Herring "Top 100 North America" list for playing a leading role for innovating in the technology business. In 2007, the PTO granted the Asserted Patents, acknowledging Egenera's new and useful innovations. Also in 2007, Egenera reached a strategic alliance with Citrix Systems, Inc., and launched PAN vmBuilder, which integrates with Citrix virtual machine management technology allowing

administrators to manage both virtual and physical servers without resorting to independent management tools.

18.    In 2008, Egenera intensified its focus on developing a software based converged infrastructure, striking an OEM deal with Dell and launching the Dell PAN System 1.0, which integrated server, network, and storage resources and provided the management capabilities to rapidly deploy applications. In 2008, Egenera won the "Best Virtualization Solution" award at the Blade Systems Insight industry conference.

19.    During this time, Cisco developed its own unauthorized version of the BladeFrame and PAN Manager. In 2009, Cisco launched its infringing Cisco UCS product line and leveraged its existing customer relationships to compete with Egenera. Cisco did so, at least in part, by using Egenera's patented technology, hiring Egenera employees, and ultimately taking Egenera customers.

20.    Egenera continues to offer its PAN and network virtualization solutions. In addition, Egenera sells cloud hosting systems on a managed public or private basis and operates a worldwide network of tier-three datacenters to support its customers. Egenera's services include infrastructure as a service, migration, backup and disaster recovery.

### D.    Cisco UCS Infringes the Asserted Patents

21.    Cisco's use, manufacture, sale, importation, and/or offering for sale of Cisco UCS within the United States infringes the Asserted Patents. Likewise, Cisco's actions with regard to the Asserted Patents and Cisco UCS give rise to infringement for inducement and contributory infringement.

22.    One of the cores of Egenera's innovative PAN technology is a new unified platform for deploying and configuring enterprise server environments. Egenera's U.S. Patent

No. 7,231,430, titled "Reconfigurable, Virtual Processing System, Cluster, Network and Method" (the "'430 patent"), teaches a platform and method for "automatically deploying at least one virtual processing area network, in response to software commands. . . ." The '430 patent was duly and legally issued by the PTO on June 12, 2007 after full and fair examination on an application filed January 4, 2002. The '430 patent claims priority to U.S. Provisional Application No. 60/285,296, filed on April 20, 2001, and incorporates that application by reference. On June 7, 2016, the PTO issued a Certificate of Correction for the '430 patent, amending some references to the included diagrams, but not altering the claims.

23.     Egenera also invented a failover system and method for use in its PANs. Some of Egenera's failover-related inventions are disclosed in U.S. Patent No. 6,971,044 (the "'044 patent"), titled "Service Clusters and Method in a Processing System with Failover Capability." The '044 patent was duly and legally issued by the PTO on November 29, 2005 (on an application filed January 4, 2002). The '044 claims priority to U.S. Provisional Application No. 60/285,296, filed on April 20, 2001, and incorporates that application by reference.

24.     Egenera also invented a disaster recovery system and method using its PAN technology in enterprise computing environments. Some of Egenera's disaster recovery-related inventions are embodied in U.S. Patent No. 7,178,059 (the "'059 patent"), titled "Disaster Recovery for Processing Resources Using Configurable Deployment Platform." The '059 patent was duly and legally issued by the PTO on February 13, 2007 on an application filed on May 7, 2003.

### 1.    Cisco UCS infringes Egenera's '430 patent

25.    Cisco's use, manufacture, sale, importation, and/or offering for sale of Cisco UCS in the United States infringes the '430 patent. Cisco also induces and/or contributes to the infringement of the '430 patent by its partners, resellers, and customers.

26.    A copy of the '430 patent is attached as Exhibit A.

27.    Cisco UCS infringes at least Claim 1 of the '430 patent in that Cisco UCS is a platform for automatically deploying at least one virtual processing area network, in response to software commands, said platform comprising: a plurality of computer processors connected to an internal communication network; at least one control node in communication with an external communication network and in communication with an external storage network having an external storage address space, wherein the at least one control node is connected to the internal communication network and thereby in communication with the plurality of computer processors, said at least one control node including logic to receive messages from the plurality of computer processors, wherein said received messages are addressed to the external communication network and to the external storage network and said at least one control node including logic to modify said received messages to transmit said modified messages to the external communication network and to the external storage network; configuration logic for receiving and responding to said software commands, said software commands specifying (i) a number of processors for a virtual processing area network (ii) a virtual local area network topology defining interconnectivity and switching functionality among the specified processors of the virtual processing area network, and (iii) a virtual storage space for the virtual processing area network, said configuration logic including logic to select, under programmatic control, a corresponding set of computer processors from the plurality of computer processors, to program

said corresponding set of computer processors and the internal communication network to establish the specified virtual local area network topology, and to program the at least one control node to define a virtual storage space for the virtual processing area network, said virtual storage space having a defined correspondence to a subset of the external storage address space of the external storage network; and wherein the plurality of computer processors and the at least one control node include network emulation logic to emulate Ethernet functionality over the internal communication network.

28.     In particular, Cisco UCS comprises a platform for deploying at least one virtual processing network in response to software commands. Cisco claims that its UCS Manager will "deploy[] a virtualized environment for data centers" and manage VLAN network settings. Cisco marketing materials also claim that the UCS B-Series Blade Servers "adapt to application demands, intelligently scale energy use, and offer best in class virtualization."

29.     Cisco advertises the UCS platform as comprised of a plurality of computer processors connected to an internal communication network. For example, Cisco marketing materials claim that "[t]he Cisco UCS U5108 Blade Server Enclosure physically houses blade servers and up to two fabric extenders." Cisco further claims that "each Cisco UCS B-Series Blade Server utilizes converged network adapters for consolidated access to the unified fabric with various levels of transparency to the operating system." The blade servers are connected to each other and a Fabric Interconnect by Fabric Extenders forming an internal communication network.

30.     Cisco UCS explains that its control node (e.g., the Fabric Interconnect of Cisco UCS) is connected to the internal communication network described above and that it may also

communicate with an external storage area network ("SAN") and external communication network as described in the '430 patent and shown in the graphic below.



31.     The Cisco UCS control node provides the logic to receive messages from the internal computer processors and modify those messages for transmission to external networks. According to Cisco, "Each [UCS] blade server chassis contains one or typically two fabric extenders, the fabric extenders connect to the I/O adapters and to the management processors on each server blade (the connection are point-to-point, but are shown in Figure 100 as busses for graphic simplicity)". The Fabric Interconnect, virtual adapters running on the computer processors, and related technology, for example, are able to operate in customized modes emulating Ethernet switching modes. Emulated Ethernet functionality in a UCS system flows over the Fabric Interconnect and includes the logic to receive and modify messages as claimed.

32.     Cisco UCS, including UCS Manager, further provides configuration logic for receiving, modifying, and responding to software commands to specify the number of processors, network topology and virtual storage space of each virtual PAN as described in the '430 patent. According to Cisco, the UCS Manager software will "deploy[] a virtualized

environment for data centers." Cisco also claims that its UCS Manager software "treats infrastructure as code to improve agility." Cisco states that Cisco UCS "offers world-record-setting virtualization performance. It features a single unified system that integrates a unified fabric, embedded management, and powerful servers." The UCS Manager provides a graphical user interface where network administrators can select which server blades and processors should form virtual servers and determine the connections and interconnections to each Fabric Interconnect in the Cisco UCS. Finally, Cisco claims that "[t]he unified fabric enables a 'wire once' deployment model in which chassis are cabled to the fabric interconnects just one time, and I/O configuration changes are made through the management system, unlike solutions that require installation of host adapters and re-cabling of racks and switches."

### 2.    Cisco's UCS infringes Egenera's '044 Patent

33.    Cisco's use, manufacture, sale, importation, and/or offering for sale of Cisco UCS in the United States infringes the '044 patent. Cisco also induces and/or contributes to the infringement of the '044 patent by its partners, resellers, and customers.

34.    A copy of the '044 patent is attached as Exhibit B.

35.    Cisco UCS infringes at least Claim 1 of the '044 patent in that Cisco UCS is a platform for computer processing, connectable to an external communication network and a storage network and comprising: a plurality of computer processors connected to an internal communication network; configuration logic to define and establish (a) a virtual local area communication network over the internal network, wherein each computer processor in the virtual local area communication network has a corresponding virtual MAC address and the virtual local area network provides communication among a set of computer processors but excludes the processors from the plurality not in the defined set, and (b) a virtual storage space

with a defined correspondence to the address space of the storage network; and failover logic, responsive to a failure of a computer processor, to allocate a computer processor from the plurality to replace the failed processor, the failover logic including logic to assign the virtual MAC address of the failed processor to the processor that replaces the failed processor, logic to assign the virtual storage space and defined correspondence of the failed processor to the processor that replaces the failed processor, and logic to reestablish the virtual local area network to include the processor that replaces the failed processor and to exclude the failed processor.

36.     In particular, Cisco UCS comprises a platform for computer processing, connectable to an external communication network and storage network, as described in, e.g., ¶¶ 28-32 above and as claimed in the '044 patent. Cisco defines servers within the UCS environment with "Service Profiles," which are software definitions of a server including network connectivity. According to Cisco, "[w]hen a service profile is deployed to a server, UCS Manager automatically configures the server, adapters, fabric extenders, and fabric interconnects to match the configuration specified in the service profile." Using Service Profiles, the UCS Manager configures a plurality of computer processors connected to an internal communication network such that a virtual local area communication network is defined and established over the internal communication network. Each processor in the Accused Product system has its own virtual MAC address, assigned in conjunction with the Service Profile that defines and establishes the processor.

37.     Cisco UCS also includes failover logic as claimed by the '044 patent. One of the benefits of Cisco UCS, along with scalability and ease of configuration, is the ability to seamlessly failover a processor (in the case of Cisco, a server blade or one of its processors) by simply assigning the Service Profile, including the LAN and SAN configurations and virtual

MAC addresses to a new server blade. Cisco UCS (used, for example, in conjunction with Cisco's PowerTool) provides for the reporting of events that occur on the computer processors, periodic polling concerning the occurrence of events, and functionality to take action in response to the occurrence of events such as the decommissioning of a server if it is determined that a server has failed. Cisco UCS is capable of associating a "failed" server and/or service profile with another available server. In this way, Cisco UCS and UCS Manager quickly repurpose hardware, expand computing capacity, and replace failed hardware resources. The use of service profiles ensures identical hardware configurations across the failed and failover systems.

### 3.    Cisco UCS infringes Egenera's '059 Patent

38.    Cisco's use, manufacture, sale, importation, and/or offering for sale of Cisco UCS in the United States infringes the '059 patent. Cisco also induces and/or contributes to the infringement of the '059 patent by its partners, resellers, and customers.

39.    A copy of the '059 patent is attached as Exhibit C.

40.    Cisco UCS infringes at least Claim 10 of the '059 patent in that Cisco UCS is a system of providing processing resources to respond to a fail-over condition in which a primary site includes a configuration of processing resources, comprising: a computer-readable specification that describes a configuration of processing resources of the primary site; a configurable processing platform capable of deploying processing area networks in response to software commands; logic to generate software commands to the configurable platform to deploy processing resources corresponding to the specification; wherein the processing resources at the primary site include a plurality of independent processing area networks and wherein the specification describes all of the independent processing area networks.

41.     Cisco UCS has a number of applications in disaster recovery including the Cisco UCS backup and restore features. As already discussed, Cisco UCS is a system capable of providing processing resources to respond to a fail-over condition in which a primary site includes a configuration of processing resources. In fact, Cisco touts Cisco UCS' ability to act as a disaster recovery system for virtualized enterprise applications.



42.     The Cisco UCS system includes the capability of generating a specification that describes a configuration of processing resources of the primary site. For example, UCS Manager provides the ability to define service profiles and create network topologies made up of organizations and service profiles. As a specified collection of processors, virtual and physical connections, and data storage resources, UCS organizations and service profiles describe configurations of processing resources. Cisco UCS further provides for the generation of XML files including the similar information.

43.     The Cisco UCS system includes the capability of providing the specification (e.g., the service profile) to a failover, i.e., secondary site having a configurable processing platform capable of deploying the specified network and system in response to a software request. There are many ways in which Cisco and its partners and customers may provide the relevant specification to the failover site UCS system including, without limitation, scripting, software, pre-event replication, or other like systems. Cisco advertises its Service Profile Templates as a way to configure virtual networks for disaster recovery scenarios.

## Hot Standby Compute Resources

In the provider networks, UCS Service Profile Templates can be leveraged to provide compute resources on an as-needed basis to avoid large CAPEX investments. The CSP can build an infrastructure with fewer than one-to-one compute resources for all the customer servers being protected. UCS compute resources can be easily and quickly deployed using UCS Director when a disaster event is declared. Once the compute resources boot up, they can be used to host recovery virtual or physical machines.

## Partner Solution for Providing Disaster Recovery

Data replication and recovery of the production servers will be provided by InMage ScoutCloud or Zerto Virtual Replication solutions. InMage is a host-based solution with agents installed on each of the servers that require protection, while Zerto is a hypervisor-based solution where virtual machines can be protected at the hypervisor layer. While their approach and supported features are different, both solutions provide a basic set of capabilities to the CSP:

- Software-based solution with low CAPEX costs

44.     The Cisco UCS system uses the specification to generate software commands to deploy or restore processing resources corresponding to the specification. Specifically, service profiles (specifications) are used to generate software commands to the failover platform to deploy processing resources corresponding to the service profile. When a service profile or profiles are deployed on the failover site, software commands are generated which deploy processing resources corresponding to the service profile at the failover site. The primary operating site, a UCS platform, can but need not include a plurality of the claimed independent PANs.

16

45.     Cisco UCS can generate commands based on service profiles for delivery to remote backup Cisco UCS systems for disaster recovery. Cisco specifically touts Cisco UCS' ability to automate recovery processes with service profiles deployed to a secondary Cisco UCS network. When service profile(s) are deployed on the Cisco UCS failover site, software commands are generated which deploy processing resources corresponding to the service profile.

46.     The specification (e.g., service profile or XML file) generated by the Cisco UCS system can describe all of the independent processing networks of the primary site or a subset thereof, and may include either a full configuration, or a minimum configuration of processing resources required.

## IV.     FIRST CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 7,231,430

47.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-46 as though fully set forth herein.

48.     The '430 patent is valid and enforceable under United States Patent Laws.

49.     Egenera owns, by assignment, all right, title, and interest in and to the '430 patent.

50.     Cisco has infringed and continues to infringe, individually and/or jointly, either literally or under the doctrine of equivalents, the '430 patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, selling, offering to sell in the United States and/or importing into the United States without authority software and hardware including without limitation Cisco UCS that infringes at least claim 1 of the '430 patent.

51.     Cisco has been, and currently is, an active inducer of infringement of the '430 patent under 35 U.S.C. § 271(b) and contributory infringer of the '430 patent under 35 U.S.C. § 271(c).

52.     Cisco knew of the '430 patent, or should of have known of the '430 patent but was willfully blind to its existence. Cisco knew or should have known of the '430 patent and its own infringing acts, or deliberately took steps to avoid learning of those facts. Based on the relationship between the parties as described above in ¶¶ 1-24 above, Cisco knew of the '430 patent or should have known prior to the filing of this lawsuit. Cisco had actual knowledge of the '430 patent and its infringement as of the filing of this Complaint.

53.     Cisco knowingly and intentionally encourages and aids at least (1) end-user customers and (2) Cisco partners and resellers to directly infringe the '430 patent. For example, Cisco provides the technical and business infrastructure, know-how, consulting services, and other support to instruct and enable Cisco UCS end-users to use Cisco UCS in an infringing manner as described above, for example, with regard to claim 1. Cisco publically provides significant amounts of documentation on implementation of Cisco UCS in an infringing manner.[1] Cisco also provides the technical and business infrastructure, know-how, consulting services, and other support to instruct and enable Cisco partners and resellers to use, sell, and offer to sell Cisco UCS in an infringing manner as described above, for example, with regard to claim 1.

54.     Cisco specifically intends that both Cisco UCS end-users and Cisco's partners and resellers infringe the '430 patent, or, alternatively, has been willfully blind to the fact that its inducing acts would cause infringement. By way of example, Cisco induces such infringement by its instructions, available online, on how to deploy and configure a Cisco UCS system in such

---

[1] *See, e.g.*, UCS Fabric Fundamentals (BRKCOM-1001); Cisco Unified Computing System (UCS): Changing the Economics of the Data; Project California: a Data Center Virtualization Server (2009); https://www.youtube.com/watch?v=2R9oWMBOAow (Disaster Recovery with Cisco UCS and VMware SRM, Part 1); https://www.youtube.com/watch?v=9pEtR8eNUYI (Disaster Recovery with Cisco UCS and VMware SRM, Part 2); UCS Networking – Deep Dive including VM-FEX (BRKCOM-2003); Cisco UCS Manager Storage Management Guide.

a manner as to infringe the '430 patent. Cisco also provides such encouragement and aid at Cisco-specific trade shows and meetings. Cisco's end-users and partners and resellers use Cisco UCS to deploy PANs as claimed in the '430 patent. Through its sales and support activities, Cisco specifically intends its customers to infringe the '430 patent. From the first sale of Cisco UCS, Cisco has been and remains aware that the normal and customary use of Cisco UCS is to infringe the '430 patent. Thus, the Cisco UCS end-users and partners and resellers, by using Cisco UCS (and in the case of the partners and resellers also selling and offering to sell Cisco UCS), directly infringe the claimed systems and methods of the '430 patent.

55.     Cisco contributorily infringes at least claim 1 of the '430 patent by providing Cisco UCS and/or components of Cisco UCS, that embody a material part of the claimed inventions of the '430 patent, that are known by Cisco to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. Cisco UCS is specially designed to infringe at least claim 1 of the '430 patent, and its accused components have no substantial non-infringing uses as discussed herein.

56.     Cisco knows that Cisco UCS infringes the '430 patent. Cisco is or should be well aware of the '430 patent, and the technology it teaches, having received a full briefing on both the then-patent-pending technology and Egenera's confidential information as described above. Cisco's hiring of Egenera employees to develop Cisco UCS furthermore demonstrates Cisco's knowing and intentional infringement of the '430 patent. Cisco's infringement of the '430 patent is willful and deliberate, entitling Egenera to enhanced damages and attorneys' fees.

57.     Cisco's infringement of the '430 patent is exceptional and entitles Egenera to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

58.     Egenera has been damaged by Cisco's infringement of the '430 patent and will continue to be damaged unless Cisco is enjoined by this Court. Egenera has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Egenera, and public interest is not disserved by an injunction.

59.     Egenera is entitled to recover from Cisco all damages that Egenera has sustained as a result of Cisco's infringement of the '430 patent including not less than a reasonable royalty.

## V.     SECOND CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 6,971,044

60.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-46 as though fully set forth herein.

61.     The '044 patent is valid and enforceable under United States Patent Laws.

62.     Egenera owns, by assignment, all right, title, and interest in and to the '044 patent.

63.     Cisco has infringed and continues to infringe, individually and/or jointly, either literally or under the doctrine of equivalents, the '044 patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, selling, offering to sell in the United States and/or importing into the United States without authority software and hardware including without limitation Cisco UCS that infringes at least claim 1 of the '044 patent.

64.     Cisco has been, and currently is, an active inducer of infringement of the '044 patent under 35 U.S.C. § 271(b) and contributory infringer of the '044 patent under 35 U.S.C. § 271(c).

65.     Cisco knew of the '044 patent, or should of have known of the '044 patent but was willfully blind to its existence. Cisco knew or should have known of the '044 patent and its own infringing acts, or deliberately took steps to avoid learning of those facts. Based on the

relationship between the parties as described above in paragraphs ¶¶ 1-24, Cisco knew or should have known of the '044 patent prior to the filing of this lawsuit. Cisco had actual knowledge of the '044 patent and its infringement as of the filing of this Complaint.

66.    Cisco knowingly and intentionally encourages and aids at least: (1) end-user customers; and (2) Cisco partners and resellers to directly infringe the '044 patent. For example, Cisco provides the technical and business infrastructure, know-how, scripts, consulting services, and other support to instruct and enable Cisco UCS end-users to use Cisco UCS in an infringing manner as described above, for example, with regard to claim 1. Cisco publically provides significant amounts of documentation on implementation of Cisco UCS in an infringing manner.[2] Cisco also provides the technical and business infrastructure, know-how, consulting services, and other support to instruct and enable Cisco partners and resellers to use, sell, and offer to sell Cisco UCS in an infringing manner as described above, for example, with regard to claim 1.

67.    Cisco specifically intends that both Cisco UCS end-users and Cisco's partners and resellers infringe the '044 patent, or, alternatively, has been willfully blind to the fact that its inducing acts would cause infringement. By way of example, Cisco induces such infringement by its instructions, available online, on how to deploy and configure a Cisco UCS system in such a manner as to infringe the '044 patent. Cisco also provides such encouragement and aid at Cisco-specific trade shows and meetings. Cisco's end-users and partners and resellers use Cisco UCS to deploy PANs that provide for failover as claimed in the '044 patent. Through its sales

---

[2] *See, e.g.*, UCS Fabric Fundamentals (BRKCOM-1001); Cisco Unified Computing System (UCS): Changing the Economics of the Data; Project California: a Data Center Virtualization Server (2009); https://www.youtube.com/watch?v=2R9oWMBOAow (Disaster Recovery with Cisco UCS and VMware SRM, Part 1);  https://www.youtube.com/watch?v=9pEtR8eNUYI (Disaster Recovery with Cisco UCS and VMware SRM, Part 2); UCS Networking – Deep Dive including VM-FEX (BRKCOM-2003); Cisco UCS Manager Storage Management Guide.

and support activities, Cisco specifically intends its customers to infringe the '044 patent. The normal and customary use of Cisco UCS is to infringe the '044 patent. Thus, the Cisco UCS end-users and partners and resellers, by using Cisco UCS (and in the case of the partners and resellers also selling and offering to sell Cisco UCS), directly infringe the claimed systems and methods of the '044 patent.

68.     Cisco contributorily infringes at least claim 1 of the '044 patent by providing Cisco UCS and/or components of Cisco UCS, that embody a material part of the claimed inventions of the '044 patent, that are known by Cisco to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. Cisco UCS is specially designed to infringe at least claim 1 of the '044 patent, and its accused components have no substantial non-infringing uses.

69.     Cisco knows that Cisco UCS infringes the '044 patent. Cisco is or should be well aware of the '044 patent, and the technology it teaches, having received a full briefing on both the then-patent-pending technology and Egenera's confidential information as described above. Cisco's hiring of Egenera employees to develop Cisco UCS furthermore demonstrates Cisco's knowing and intentional infringement of the '044 patent. Cisco's infringement of the '044 patent is willful and deliberate, entitling Egenera to enhanced damages and attorneys' fees.

70.     Cisco's infringement of the '044 patent is exceptional and entitles Egenera to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

71.     Egenera has been damaged by Cisco's infringement of the '044 patent and will continue to be damaged unless Cisco is enjoined by this Court. Egenera has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Egenera, and public interest is not disserved by an injunction.

72.     Egenera is entitled to recover from Cisco all damages that Egenera has sustained as a result of Cisco's infringement of the '044 patent including not less than a reasonable royalty.

## VI.     THIRD CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,178,059

73.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-46 as though fully set forth herein.

74.     The '059 patent is valid and enforceable under United States Patent Laws.

75.     Egenera owns, by assignment, all right, title, and interest in and to the '059 patent.

76.     Cisco has infringed and continues to infringe, individually and/or jointly, either literally or under the doctrine of equivalents, the '059 patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, selling, offering to sell in the United States and/or importing into the United States without authority software and hardware including without limitation Cisco UCS that infringes at least claim 10 of the '059 patent.

77.     Cisco has been, and currently is, an active inducer of infringement of the '059 patent under 35 U.S.C. § 271(b) and contributory infringer of the '059 patent under 35 U.S.C. § 271(c).

78.     Cisco knew of the '059 patent, or should of have known of the '059 patent but was willfully blind to its existence. Cisco knew or should have known of the '059 patent and its own infringing acts, or deliberately took steps to avoid learning of those facts. Based on the relationship between the parties as described above in paragraphs ¶¶ 1-24, Cisco knew or should have known of the '059 patent prior to the filing of this lawsuit. Cisco had actual knowledge of the '059 patent as of the filing of this Complaint.

79.     Cisco knowingly and intentionally encourages and aids at least: (1) end-user customers and (2) Cisco partners and resellers to directly infringe the '059 patent. For example, Cisco provides the technical and business infrastructure, know-how, scripts, consulting services, and other support to instruct and enable Cisco UCS end-users to use Cisco UCS in an infringing manner as described above, for example, with regard to claim 10. Cisco publically provides significant amounts of documentation on implementation of Cisco UCS in an infringing manner.[3] Cisco also provides the technical and business infrastructure, know-how, consulting services, and other support to instruct and enable Cisco partners and resellers to use, sell, and offer to sell Cisco UCS in an infringing manner as described above, for example, with regard to claim 10.

80.     Cisco specifically intends that both Cisco UCS end-users and Cisco's partners and resellers infringe the '059 patent, or, alternatively, has been willfully blind to the fact that its inducing acts would cause infringement. By way of example, Cisco induces such infringement by its instructions, available online, on how to deploy and configure a Cisco UCS system(s) in such a manner as to infringe the '059 patent. Cisco also provides such encouragement and aid at Cisco-specific trade shows and meetings. Cisco's end-users and partners and resellers use Cisco UCS for disaster-recovery as claimed in the '059 patent. Through its sales and support activities, Cisco specifically intends its customers to infringe the '059 patent. The normal and customary use of Cisco UCS as described herein is to infringe the '059 patent. Thus, the Cisco UCS end-users and partners and resellers, by using Cisco UCS (and in the case of the partners and resellers

---

[3] See, e.g., UCS Fabric Fundamentals (BRKCOM-1001); Cisco Unified Computing System (UCS): Changing the Economics of the Data; Project California: a Data Center Virtualization Server (2009); https://www.youtube.com/watch?v=2R9oWMBOAow (Disaster Recovery with Cisco UCS and VMware SRM, Part 1); https://www.youtube.com/watch?v=9pEtR8eNUYI (Disaster Recovery with Cisco UCS and VMware SRM, Part 2); UCS Networking – Deep Dive including VM-FEX (BRKCOM-2003); Cisco UCS Manager Storage Management Guide.

24

also selling and offering to sell Cisco UCS), directly infringe the claimed systems and methods of the '059 patent.

81.     Cisco contributorily infringes at least claim 10 of the '059 patent by providing Cisco UCS and/or components of Cisco UCS, that embody a material part of the claimed inventions of the '059 patent, that are known by Cisco to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. Cisco UCS is specially designed to infringe at least claim 10 of the '059 patent, and its accused components have no substantial non-infringing uses.

82.     Cisco knows that Cisco UCS infringes the '059 patent. Cisco is or should be well aware of the '059 patent, and the technology it teaches, having received a full briefing on both the then-patent-pending technology and Egenera's confidential information as described above. Cisco's hiring of Egenera employees to develop Cisco UCS furthermore demonstrates Cisco's knowing and intentional infringement of the '059 patent. Cisco's infringement of the '059 patent is willful and deliberate, entitling Egenera to enhanced damages and attorneys' fees.

83.     Cisco's infringement of the '059 patent is exceptional and entitles Egenera to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

84.     Egenera has been damaged by Cisco's infringement of the '059 patent and will continue to be damaged unless Cisco is enjoined by this Court. Egenera has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Egenera, and public interest is not disserved by an injunction.

85.     Egenera is entitled to recover from Cisco all damages that Egenera has sustained as a result of Cisco's infringement of the '059 patent including not less than a reasonable royalty.

## VII.    NOTICE OF REQUIREMENT OF LITIGATION HOLD

86.    Defendant is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

87.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mails (both sent and received, whether internally or externally), information concerning e-mails (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, or employees if Defendant's electronically stored information resides there.

26

88.     Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## VIII.   DEMAND FOR JURY TRIAL

89.     In accordance with Rule 38 of the Federal Rules of Civil Procedure and relevant Local Rules, Egenera respectfully demands a jury trial of all issues triable to a jury.

## IX.     PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A.     A judgment that Cisco has infringed one or more claims of each of the Asserted Patents in this litigation pursuant to 35 U.S.C. §§ 271(a), 271(b), and/or 271(c);

B.     A judgment and order enjoining Cisco, its employees and agents, and any other person(s) in active concert or participation with it from directly infringing, contributorily infringing, and/or inducing the infringement of the Asserted Patents;

C.     A judgment and order requiring Cisco to pay Plaintiff's damages under 35 U.S.C. § 284 (but in no event less than a reasonable royalty), and supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting as needed;

D.      A judgment and order requiring Cisco to pay Plaintiff pre-judgment and postjudgment interest on the damages awarded, including an award of pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the Asserted Patents by Cisco to the day a damages judgment is entered, and an award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

E.      A judgment and order finding this to be an exceptional case and requiring Cisco to pay the costs of this action (including all disbursements) and attorneys' fees, pursuant to 35 U.S.C. § 285;

F.      A judgment and order finding that Cisco's infringement is willful and deliberate, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284;

G.      In the alternative, in the event injunctive relief is not granted as requested by Plaintiff, an award of a compulsory future royalty; and

H.      Such other and further relief as the Court deems just and equitable.

August 5, 2016

Respectfully submitted,


By: /s/ Michael John Miguel_____
Michael John Miguel, BBO #565942
mmiguel@mckoolsmith.com
MCKOOL SMITH, P.C.
One California Plaza
300 South Grand Ave, Suite 2900
Los Angeles, CA 90071
Telephone: 213.694.1200
Fax: 213.694.1234

John Campbell (Pro Hac Vice to be filed)
TX Bar No. 24036314
awilliams@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: 512.692.8700
Fax: 512.692.8744

Mike McKool (Pro Hac Vice to be filed)
TX Bar No. 13732100
mmckool@mckoolsmith.com
Chris Bovenkamp (Pro Hac Vice to be filed)
TX Bar No. 24006877
cbovenkamp@mckoolsmith.com
Avery Williams (Pro Hac Vice to be filed)
TX Bar No. 24075282
awilliams@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

COUNSEL FOR PLAINTIFF
EGENERA, INC.