**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| EGENERA, INC., | |
| Plaintiff, | Civil Action No. 1:16-cv-11613-RGS |
| v. | |
| CISCO SYSTEMS, INC., | JURY TRIAL |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF EGENERA'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.     SUMMARY JUDGMENT STANDARD ..................................................................1

II.    MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT............1

    A.     Overview of the Motion.................................................................................1

    B.     Statement of Certain Material Facts ............................................................3

        1.     United States Patent Nos. 7,231,430 and 6,971,044 and Peter Schulter......3

        2.     Cisco's *inter partes* review petitions. ....................................................3

        3.     Removal of Peter Schulter as named inventor of the '430 patent...............4

        4.     Cisco's contentions. ...........................................................................4

    C.     Inequitable Conduct Legal Standard.............................................................5

    D.     Argument ........................................................................................................6

        1.     Intent: Egenera did not act with deceptive intent.........................................6

        2.     Materiality: No "but-for" materiality or "egregious misconduct."..............7

        3.     Cisco has not shown that Mr. Schulter is an inventor...............................10

        4.     Cisco misrepresents inventor testimony. ..................................................11

    E.     Conclusion ...................................................................................................12

III.   MOTION FOR SUMMARY JUDGMENT OF NO IMPROPER INVENTORSHIP ......12

    A.     Statement of Certain Material Facts ...........................................................12

    B.     Argument .....................................................................................................12

IV.    MOTION FOR SUMMARY JUDGMENT ON CISCO'S EQUITABLE DOCTRINES
       DEFENSES.........................................................................................................13

    A.     Overview of the Motion...............................................................................13

    B.     Statement of Certain Material Facts ...........................................................14

    C.     Argument .....................................................................................................14

        1.     Cisco provided no factual or legal basis for (1) waiver; (2) acquiescence;
            (3) implied license; and (4) unclean hands. ............................................14

      2.     Laches is not a legally available defense. ...................................................14

      3.     Cisco's evidence fails to show the elements of equitable estoppel. ..........14

V.     MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION ...........................15

    A.     Overview of the Motion.........................................................................................15

    B.     Statement of Certain Facts ....................................................................................15

      1.     The '430 patent. ........................................................................................15

      2.     Cisco's '430 patent *inter partes* review petition.......................................17

      3.     Cisco's invalidity defense and contentions...............................................17

    C.     Anticipation Legal Standard ..................................................................................18

    D.     Each Alleged Prior Art Reference Is Missing At Least One Limitation ...............18

    E.     Conclusion .............................................................................................................20

VI.    CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allergan, Inc. v. Apotex Inc.*,
   754 F.3d 952 (Fed. Cir. 2014)...................................................................................18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).....................................................................................................1

*Burroughs Wellcome Co. v. Barr Lab.*,
   40 F.3d 1223 (Fed. Cir. 1994)...................................................................................10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).....................................................................................................1

*Coleman v. Dines*,
   754 F.2d 353 (Fed. Cir. 1985)...................................................................................10

*Eli Lilly & Co.*,
   376 F.3d (Fed. Cir. 2004)...........................................................................................10

*Ethicon, Inc. v. United States Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998).................................................................................10

*Exergen Corp. v. Kaz USA, Inc.*,
   120 F. Supp. 3d 1, at *4 (D. Mass. 2015) ..................................................................7

*Exergen Corp. v. Kaz USA, Inc.*,
   No. 1:13-cv-10628-RGS, slip op. (D. Mass. Feb. 12, 2016) ...................................14

*Fed. Deposit Ins. Corp. v. Elder Care Servs., Inc.*,
   82 F.3d 524 (1st Cir. 1996).................................................................................1, 14

*In re Katz*,
   687 F.2d 450 (C.C.P.A. 1982) ..................................................................................10

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
   863 F.2d 867 (Fed. Cir. 1988).....................................................................................5

*Microsoft Corp. v. i4i Ltd. Partnership*,
   131 S. Ct. 2238 (2011)...............................................................................................18

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*,
   LLC, 137 S. Ct. 954 (2017) ......................................................................................14

*Stern v. Trs. of Columbia Univ.*,
   2005 U.S. Dist. LEXIS 2418 (S.D.N.Y. Feb. 18, 2005).........................................10

*StoneEagle Servs. v. Gillman*,
   746 F.3d 1059 (Fed. Cir. 2014)............................................................................9

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)................................................................2, 5, 7, 8

*Trimed, Inc. v. Stryker Corp.*,
   608 F.3d 1333 (Fed. Cir. 2010)..........................................................................18

*Yeda Research & Dev. Co. v. ImClone Sys.*,
   443 F. Supp. 2d 570 (S.D.N.Y. 2006)................................................................11

## STATUTES

35 U.S.C. § 102................................................................................................15, 18

35 U.S.C. § 103........................................................................................................15

35 U.S.C. § 282........................................................................................................18

## OTHER AUTHORITIES

FED. R. CIV. P. 56........................................................................................................1

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | U.S. Provisional Patent Application No. 60/285,296 |
| 2 | Egenera Interframe I/O Architecture, dated September 29, 2000 |
| 3 | INTENTIONALLY OMITTED |
| 4 | Excerpts of Nancy Linck Expert Report, dated May 25, 2018 |
| 5 | U.S. Patent No. 7,231,430 |
| 6 | U.S. Patent No. 6,971,044 |
| 7 | Excerpts of Cisco's Petition for Inter Partes Review of U.S. Patent No. 7,231,430 |
| 8 | Excerpts of Cisco's Petition for Inter Partes Review of U.S. Patent No. 6,971,044 |
| 9 | Excerpts of Egenera's Preliminary Response to Cisco's Petition for IPR of U.S. Patent No. 7,231,430 |
| 10 | Excerpts of Declaration of Dr. H. Jonathan Chao in Inter Partes Review of U.S. Patent No. 7,231,430 |
| 11 | Decision Granting Institution of Inter Partes Review of U.S. Patent No. 6,791,044 |
| 12 | Decision Denying Institution of Inter Partes Review of U.S. Patent No. 7,231,430 |
| 13 | Excerpts of Egenera's Response to Cisco's Petition for IPR of U.S. Patent No. 6,971,044 |
| 14 | Excerpts of Declaration of Dr. H. Jonathan Chao in Inter Partes Review of U.S. Patent No. 6,971,044 |
| 15 | Excerpts of March 16, 2018 Deposition of Scott Geng |
| 16 | Excerpts of March 16, 2018 Deposition of Peter Manca |
| 17 | Request to Correct Inventorship (37 C.F.R. § 1.324(a)), dated September 11, 2017 |
| 18 | Decision on Petition for Correction of Inventorship Under 37 C.F.R. § 1.324, dated January 16, 2018 |
| 19 | Interframe Network Architecture, Version 0.3, dated November 7, 2000 |
| 20 | Interframe Network Architecture, Version 0.2, dated October 17, 2000 |
| 21 | Excerpts of Mark Jones Expert Report, dated May 25, 2018 |
| 22 | Excerpts of March 2, 2018 Deposition of Peter Schulter |
| 23 | Excerpts of March 6, 2018 Deposition of Max Smith |
| 24 | Excerpts of February 27, 2018 Deposition of Paul Curtis |
| 25 | Excerpts of March 9, 2018 Deposition of Alan Greenspan |
| 26 | Excerpts of Mark Jones Expert Report, dated April 20, 2018 |
| 27 | Exhibit 3 to Mark Jones Expert Report, dated April 20, 2018 |
| 28 | Excerpts of Egenera's First Set of Interrogatories to Cisco, dated May 25, 2017 |
| 29 | Excerpts of Cisco's Objections and Responses to Egenera's First Set of Interrogatories (Nos. 1-13), dated June 26, 2017 |
| 30 | Excerpts of Cisco's First Supplemental Objections and Responses to Egenera's First Set of Interrogatories (Nos. 1, 11, 12, 13), dated October 27, 2017 |

| Exhibit No. | Description |
|---|---|
| 31 | Excerpts of Cisco's Second Supplemental Objections and Responses to Egenera's First Set of Interrogatories (Nos. 1, 7, 10, 11, 12, 13), dated December 11, 2017 |
| 32 | Excerpts of Cisco's Supplemental Objections and Responses to Egenera's First and Second Set of Interrogatories (Nos. 8, 11, 15), dated March 9, 2018 |
| 33 | Excerpts of Cisco's Supplemental Objections and Responses to Egenera's First, Second, Third, and Fourth Sets of Interrogatories (Nos. 1-22), dated March 16, 2018 |
| 34 | *Exergen Corp. v. Kaz USA, Inc.*, No. 1:13-cv-10628-RGS (D. Mass. Feb. 12, 2016) |
| 35 | Excerpts of Egenera's Fourth Set of Interrogatories to Cisco, dated January 26, 2018 |
| 36 | Excerpts of Cisco's Objections and Responses to Egenera's Fourth Set of Interrogatories (Nos.16-22), dated February 26, 2018 |
| 37 | Excerpts of Cisco's Preliminary Invalidity Contentions, dated June 6, 2017 |
| 38 | Excerpts of Cisco's First Amended Invalidity Contentions, dated December 31, 2017 |
| 39 | Excerpts of Cisco's Second Amended Invalidity Contentions, dated March 16, 2018 |
| 40 | Excerpts of Kevin Jeffay Expert Report, dated April 20, 2018 |
| 41 | Excerpts of Appendix 1 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 42 | Excerpts of Appendix 2 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 43 | Excerpts of Appendix 3 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 44 | Excerpts of Appendix 4 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 45 | Excerpts of Appendix 5 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 46 | Excerpts of Appendix 6 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 47 | Excerpts of Appendix 7 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 48 | Excerpts of Appendix 8 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 49 | Excerpts of Appendix 9 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 50 | Excerpts of Appendix 10 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 51 | Excerpts of Appendix 11 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 52 | Excerpts of Appendix 12 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 53 | Excerpts of Appendix 13 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 54 | Excerpts of Appendix 14 to Kevin Jeffay Expert Report, dated April 20, 2018 |
| 55 | Excerpts of Appendix 1 to Mark Jones Expert Report, dated May 25, 2018 |
| 56 | Excerpts of Appendix 2 to Mark Jones Expert Report, dated May 25, 2018 |
| 57 | Excerpts of Appendix 3 to Mark Jones Expert Report, dated May 25, 2018 |
| 58 | Excerpts of Appendix 4 to Mark Jones Expert Report, dated May 25, 2018 |
| 59 | Excerpts of Appendix 5 to Mark Jones Expert Report, dated May 25, 2018 |
| 60 | Excerpts of Appendix 6 to Mark Jones Expert Report, dated May 25, 2018 |
| 61 | Excerpts of Appendix 7 to Mark Jones Expert Report, dated May 25, 2018 |
| 62 | Excerpts of Appendix 8 to Mark Jones Expert Report, dated May 25, 2018 |
| 63 | Excerpts of Appendix 9 to Mark Jones Expert Report, dated May 25, 2018 |
| 64 | Excerpts of Appendix 10 to Mark Jones Expert Report, dated May 25, 2018 |

| EXHIBIT NO. | DESCRIPTION |
|:---:|:---|
| 65 | Excerpts of Appendix 11 to Mark Jones Expert Report, dated May 25, 2018 |
| 66 | Excerpts of Appendix 12 to Mark Jones Expert Report, dated May 25, 2018 |
| 67 | Excerpts of Appendix 13 to Mark Jones Expert Report, dated May 25, 2018 |
| 68 | Excerpts of Appendix 14 to Mark Jones Expert Report, dated May 25, 2018 |

Egenera files this motion for summary judgment as to the following Cisco defenses: (1) inequitable conduct; (2) improper inventorship; (3) equitable doctrines; and (4) anticipation.

## I.      SUMMARY JUDGMENT STANDARD

FED. R. CIV. P. 56(c) "mandates the entry of summary judgment . . . upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[I]f a party resists summary judgment by pointing to a factual dispute on which it bears the burden of proof at trial [e.g., an affirmative defense], that party must point to evidence affirmatively tending to prove the fact in its favor." *Fed. Deposit Ins. Corp. v. Elder Care Servs., Inc.*, 82 F.3d 524, 526 (1st Cir. 1996). "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## II.      MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

### A.      Overview of the Motion

While enforcing and protecting its patent rights against Cisco, Egenera discovered that U.S. Patent No. 7,231,430 (the "'430 patent") is entitled to a conception date before one of the previously-named inventors was hired at Egenera. Egenera promptly requested and was granted a correction of inventorship from the USPTO. As a former USPTO Solicitor of Patents and Trademarks noted, "[d]etermination of inventorship can be quite complicated, particularly when there are multiple inventors and work is conducted through teamwork" and so "inventorship corrections are encouraged and liberally granted." Ex. 4 ¶ 33.

Rather than recognize Egenera's request to correct inventorship for what it is—a simple correction of an understandable mistake—Cisco casts it as a broad conspiracy to defraud the USPTO and this Court. Dkt. 103 at 14-17. As the en banc Federal Circuit held seven years ago:

1

> [T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps.

*Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). Cisco's efforts to attack Egenera and its lawyers in this case with inequitable conduct are exactly the plague that the en banc Federal Circuit sought to curb in *Therasense*.

Cisco's inequitable conduct charge fails to make both necessary—and independent—showings under *Theresanse*: (1) intent to deceive; and (2) materiality. *Therasense*, 649 F.3d at 1287. *First*, Cisco cannot show an intent to deceive. Instead, the evidence shows that after investigating conception of the '430 patent while preparing a response to Cisco's failed '430 patent *inter partes* review ("IPR") bid, Egenera came to understand that Peter Schulter was not an inventor of the '430 patent. The eleven previously named inventors (including Mr. Schulter) swore that they agreed or did not disagree with removing Mr. Schulter as a named inventor of the '430 patent. And two independent technical experts (engineering professors from NYU and Virginia Tech) agree that a provisional application, which was based on a document dated prior to Mr. Schulter joining Egenera, supports the '430 patent's claims.

*Second*, Cisco cannot show that anything material was withheld or misrepresented to the USPTO. This is at least so because the USPTO did not rely on Egenera's evidence of earlier conception in denying Cisco's '430 patent IPR bid. Instead, the USPTO denied Cisco's '430 patent IPR request on the grounds that Cisco's alleged prior art failed to render the '430 patent's claims obvious. Nor was any of the information Egenera provided to the USPTO "unmistakably" false as Cisco apparently contends. Again, two independent technical experts agree that a provisional application, which was based on a document dated prior to Mr. Schulter joining Egenera, supports the '430 patent's claims—demonstrating the information provided to the

2

USPTO is not "unmistakably" false. And the eleven previously named inventors (including Mr. Schulter) swore that they did not disagree with removing Mr. Schulter as a named inventor—demonstrating the information provided to the USPTO is not "unmistakably" false.

B.      **Statement of Certain Material Facts[1]**

1.      **United States Patent Nos. 7,231,430 and 6,971,044 and Peter Schulter.**

The '430 patent, which stems from a non-provisional application filed January 4, 2002, claims priority to a provisional application filed April 20, 2001. SOF#1, 5-7. U.S. Patent No. 6,971,044 (the "'044 patent"), which also stems from a non-provisional application filed January 4, 2002, claims priority to the same provisional as the '430 patent. SOF#1, 9-11. Eleven people, including Peter Schulter, were named inventors of the '430 patent when it issued. SOF#8.

2.      **Cisco's *inter partes* review petitions.**

On April 28, 2017, Cisco filed IPR petitions for the '430 and '044 patents. SOF#13-14. In the '430 patent IPR petition, Cisco proposed no terms for construction. SOF#15.

In its preliminary response to the '430 patent IPR petition, Egenera contended that Cisco's prior art did not render the claims of the '430 patent obvious and that the '430 patent's claims were conceived of before one of Cisco's references (Grosner). SOF#16-19. NYU engineering professor Dr. Jonathan Chao explained that the '430 patent's claims are supported by the patent's provisional application, which, as Egenera explained, is nearly identical to an Egenera document titled "Egenera Interframe I/O Architecture" dated September 29, 2000—nearly five weeks before Grosner. SOF#2-3, 20-22. The USPTO denied Cisco's '430 patent IPR petition on the grounds that Cisco failed to show the '430 patent's claims were obvious. SOF#24-27. The USPTO did not rely on the earlier conception of the '430 patent. SOF#26-27.

---

[1] Egenera's accompany Rule 56.1 statement includes its Statement of Material Facts. Egenera recites certain of those facts herein, including citations of the format "SOF#[Fact Number(s)]."

3

### 3. Removal of Peter Schulter as named inventor of the '430 patent.

Egenera's '430 patent conception analysis—undertaken after Cisco's IPR petition was filed—led to the realization that Mr. Schulter is not an inventor of the '430 patent's claimed inventions. SOF#32-34. Mr. Schulter joined Egenera on October 2, 2000, three days after the September 29, 2000 conception document. SOF#4.

Following standard practice established by Congress and the USPTO to remedy inventorship mistakes, Egenera filed a request to correct inventorship with the USPTO on September 11, 2017. SOF#33. All eleven previously named inventors (including Mr. Schulter) swore under oath that they agreed or did not disagree with Mr. Schulter's removal. SOF#34. The USPTO granted the request to correct inventorship on January 16, 2018. SOF#35.

### 4. Cisco's contentions.

On February 5, 2018, the Court issued its claim construction order in which it held that the corresponding structure for the "logic to modify said received messages to transmit said modified messages to the external communication network" term is "virtual LAN server 335, virtual LAN proxy 340, and physical LAN driver 345" and equivalents. SOF#37-39.

On March 16, 2018, Cisco filed its answer to Egenera's amended complaint, and included inequitable conduct as a defense. SOF#40-41. As evidence that Mr. Schulter should have remained a named inventor, Cisco relies on: (1) Peter Schulter's alleged conception of "emulating Ethernet functionality"; and (2) Peter Schulter's alleged conception of "virtual LAN Proxy" based on discussion of "LAN Proxy" in version 0.3 of a document dated November 7, 2000 and titled "Interframe Network Architecture," "by Peter A. Schulter." SOF#42.

Peter Schulter testified that "emulating Ethernet functionality" was conceived of before he joined Egenera. SOF#46. Version 0.2 of that "Interframe Network Architecture," dated October 17, 2000—before Grosner—contains nearly identical material regarding "LAN Proxy"

as version 0.3. SOF#43-45. Other inventors testified that virtual LAN proxy functionality was conceived before Mr. Schulter joined Egenera. SOF#49-50.

Virginia Tech engineering professor Dr. Mark Jones has testified that the '430 patent's claims are entitled to a September 29, 2000 conception date. SOF#51.

### C.    Inequitable Conduct Legal Standard

In *Therasense*, the Federal Circuit "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Therasense*, 649 F.3d at 1293-94. "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Id.* at 1287. "The accused infringer must prove both elements—intent and materiality—by clear and convincing evidence." *Id.*

As to intent, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Id.* at 1290. The required clear and convincing evidence standard for proving the specific intent to deceive is met only if specific intent to deceive is "'the single most reasonable inference able to be drawn from the evidence.'" *Id.* (internal citations omitted). Stated another way, the evidence must "*require*" a finding of an intent to deceive. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988) (emphasis original). "Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91 (internal citations omitted).

"[T]he materiality required to establish inequitable conduct is but-for materiality." *Id.* at 1291. But-for materiality requires a showing that the USPTO would not have issued the patent "but-for" the alleged deceitful conduct. *Id.* Affirmative egregious misconduct, such as the filing of an *unmistakably* false affidavit, may satisfy the materiality requirement. *Id.* at 1292.

"[I]nequitable conduct hinges on basic fairness." *Id.* at 1292. "Because inequitable conduct renders an entire patent (or even a patent family) unenforceable, as a general rule, this doctrine should only be applied in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim." *Id.* "After all, the patentee obtains no advantage from misconduct if the patent would have issued anyway." *Id.*

> **D.    Argument**

>> **1.    Intent: Egenera did not act with deceptive intent.**

Cisco provides insufficient evidence that anyone acted with deceptive intent. Cisco has not provided any evidence from which the Court could reasonably infer that Egenera, its attorneys, or the inventors did not believe that the declarations correcting the named inventors were false. Cisco disagrees with everyone: Dr. Jones, Dr. Chao, the ten inventors, and Peter Schulter. But at most, Cisco's disagreement with these thirteen engineering professionals is a technical disagreement over whether the claims are supported by the September 29, 2000 conception document. But conjuring up a technical disagreement is not nearly enough to prove by clear and convincing evidence that "the specific intent to deceive [is] 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d at 1290 (internal citations omitted). Cisco's evidence is not nearly enough to "*require*" a finding of an intent to deceive. *Kingsdown*, 863 F.2d at 877 (emphasis original).

Quite simply, a specific intent to deceive is not the single most reasonable inference or a reasonable inference at all in this case. To arrive at its inequitable conduct conclusion, Cisco relies on an allegation that Mr. Schulter conceived of "virtual LAN proxy" material required by the Court's February 5, 2018 claim construction. SOF#39-42. Cisco bases this on discussion of a "LAN Proxy" in a November 7, 2000 version 0.3 of an "Interframe Network Architecture" document. SOF#43. Cisco ignores that Egenera did not need to correct the inventorship to prove

conception prior to Grosner. The October 17, 2000 version 0.2 of the same document contains a nearly identical "LAN Proxy" discussion and demonstrates that Egenera could have pre-dated Grosner even under Cisco's view that Mr. Schulter should remain a named inventor. SOF#43-45. Correcting inventorship merely to pre-date Grosner was unnecessary.

This Court has granted summary judgment of no inequitable conduct based on a failure to prove specific intent is the single most reasonable inference. *Exergen Corp. v. Kaz USA, Inc.*, 120 F. Supp. 3d 1 (D. Mass. 2015). In *Exergen*, the accused infringers asserted that Exergen acted with deceptive intent because it knew of certain references during prosecution of the patent application and failed to disclose them to the USPTO. *Id.* at 4. The accused infringers contended that the "most reasonable inference" to be drawn from the facts was that Exergen acted with intent to deceive the USPTO by not disclosing them. *Id.* The Court explained that "deceptive intent was not the 'single most reasonable inference' to be drawn" from the evidence. *Id.* at 7.

The same conclusion applies here: the single most reasonable inference to be drawn is that Egenera believed the '430 patent's claims were conceived of by September 29, 2000. Two technical experts—Dr. Chao and Dr. Jones—agreed with that conclusion. SOF#2-3, 20-22, 51. The eleven previously named inventors (Mr. Schulter's co-workers and co-collaborators on Egenera's BladeFrame product) did not disagree with Mr. Schulter's removal. SOF#34. And, as just discussed, Mr. Schulter did not need to be removed to pre-date Grosner. The evidence demonstrates that inferring deceptive intent is not reasonable, much less the single most reasonable inference. *Therasense*, 649 F.3d at 1290-91 (internal citations omitted).

### 2.     Materiality: No "but-for" materiality or "egregious misconduct."

Typically, materiality requires establishing "but-for" materiality. *Therasense*, 649 F.3d at 1291. This requires a showing that the USPTO would not have issued the patent "but-for" the

alleged misconduct. *Id.* Yet Cisco cannot prove but-for materiality because the USPTO rejected Cisco's IPR bid without relying on Egenera's evidence of earlier conception. SOF#24-26.

As a result of an undeniable lack of "but-for" materiality, it appears (including based on Cisco's expert report)[2] that Cisco is attempting to employ the rare exception that materiality exists as a result of "egregious misconduct." In *Therasense,* the court recognized that the filing of an "unmistakably" false affidavit can be material. *Id.* at 1292. But Egenera's affidavits are not "unmistakably" false—two experts agree with Egenera's September 29, 2000 conception determination, and the eleven previously named inventors declared under oath that they either agreed or did not disagree with Mr. Schulter's removal as inventor. SOF#2-3, 20-22, 34, 51.

### a. Conception was immaterial to Cisco's failed IPR bid.

The USPTO denied Cisco's bid for a '430 patent IPR without considering Egenera's earlier conception date—the conception evidence was immaterial to the USPTO's decision. SOF#24-27. Instead, the USPTO rejected Cisco's argument that Cisco's best prior art references rendered the '430 patent claims obvious under a lesser evidentiary standard and using a broader claim construction standard than apply in this Court. SOF#25-27.[3]

---

[2] As discussed in a separate motion, much of Cisco's expert's report should be stricken. He relies on rules and standards rejected by the Federal Circuit as a basis for inequitable conduct.

[3] The former Solicitor of Patents and Trademarks at the USPTO ("USPTO Solicitor") explained that the USPTO does not consider inventorship as part of an IPR. Ex. 4 ¶ 60. Cisco criticizes Egenera for not alerting the PTAB that inventorship required correction. Of course, Cisco had every opportunity to raise this with the PTAB and Egenera did file a Request to Correct Inventorship with the USPTO. Cisco argues that USPTO regulations required Egenera to alert the USPTO in the IPR that Egenera filed for a Request to Correct Inventorship with the USPTO. The former USPTO Solictor disagrees, Ex. 4 ¶¶ 194-96, but in any event, failure to follow this USPTO regulation is not inequitable conduct, *Therasense*, 649 F.3d at 1287.

**b.      Egenera did not commit "egregious misconduct".**

Given the undeniable lack of "but-for" materiality, Cisco must show some sort of "egregious misconduct" such as the submission of "unmistakably false" affidavits. *Therasense*, 649 F.3d at 1292. Cisco cannot do so.

Two independent technical experts have analyzed Egenera's conception evidence and reached the same conclusion: the '430 patent's claims are supported by its provisional application (and therefore a September 29, 2000 Egenera document). SOF#2-3, 20-22, 51. Mr. Schulter did not join Egenera until October 2, 2000 and could not have contributed to conception. SOF#4. The eleven previously named inventors declared under penalty of perjury that they agreed with or did not disagree with the decision to remove Mr. Schulter as an inventor of the '430 patent—including Mr. Schulter himself. SOF#34. While recognizing that Mr. Schulter contributed to product development, SOF#46, 48, 50, the inventors and Mr. Schulter also recognized that this important product development work did not include conception of the claimed invention, SOF#34, 46, 49-50. *See StoneEagle Servs. v. Gillman*, 746 F.3d 1059, 1168 (Fed. Cir. 2014) (noting that "the most favorable inference . . . shows only that Gillman assisted in *constructively* reducing an invention to practice").

The question for purposes of this motion is not whether Egenera's conception date is correct, but whether the conception date is so unmistakably incorrect that two engineering professors from respected research institutions should not have concluded otherwise *and* eleven fact witnesses lied when they swore under oath that they agreed or did not disagree with correcting inventorship. 649 F.3d at 1292. Cisco has not—and cannot—prove that Dr. Jones and Dr. Chao are "unmistakably" wrong in their conclusion that the '430 patent claims are supported by the provisional patent application *and* that all ten inventors plus Peter Schulter signed

"unmistakably" false declarations under penalty of perjury because they knew the '430 patent claims were not supported by the provisional patent application.

### 3. Cisco has not shown that Mr. Schulter is an inventor.

"Conception is the touchstone of inventorship, the completion of the mental part of the invention." *Burroughs Wellcome Co. v. Barr Lab.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). It is the formation "in the mind of the inventor," that establishes conception. *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985). "[A] person is a joint inventor only if he contributes to the conception of the claimed invention." *Eli Lilly & Co.*, 376 F.3d at 1359 (Fed. Cir. 2004) (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998)). "[O]ne does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). In fact, each of Cisco's conception arguments is flawed factually or legally.

To argue that Mr. Schulter is an inventor, Cisco argues that he conceived of two aspects of the '430 patent claims. *First*, Cisco argues that Mr. Schulter conceived of the "emulating Ethernet functionality" aspects of the '430 patent claims. Dkt. 103 at 14-15; SOF#42. But Mr. Schulter testified that concept was known to Egenera before he joined. SOF#46. And two independent technical experts have analyzed Egenera's conception evidence and reached the same conclusion: the '430 patent's claims are supported by its provisional application (and therefore a September 29, 2000 Egenera document). SOF#2-3, 20-22, 51.

*Second*, Cisco relies on version 0.3 of an internal Egenera document titled "Interframe Network Architecture" "by Peter A. Schulter" to argue he conceived of "virtual LAN proxy." Dkt. 103 at 14-15; SOF#42-43. However, the author notation on the "Interframe Network Architecture" document is not evidence of inventorship, but merely authorship. *In re Katz*, 687 F.2d 450, 455 (C.C.P.A. 1982) ("[A]uthorship of an article by itself does not raise a presumption

10

of inventorship with respect to the subject matter disclosed in the article. Thus, coauthors may not be presumed to be coinventors merely from the fact of coauthorship."); *Stern v. Trs. of Columbia Univ.*, 2005 U.S. Dist. LEXIS 2418, *23 (S.D.N.Y. Feb. 18, 2005) ("Nothing in any version of the rhesus monkey paper demonstrates any contribution by Stern to the conception of '353 Patent."). This makes sense as "the basis for listing scientists as authors of papers is altogether different from the legal basis for determining proper inventorship" *Yeda Research & Dev. Co. v. ImClone Sys.*, 443 F. Supp. 2d 570, 603 n. (S.D.N.Y. 2006).

In this circumstance, it is incumbent on Cisco "to provide a satisfactory showing which would lead to a reasonable conclusion" that Mr. Schulter conceived of some aspect of the invention. *In re Katz*, 687 F.2d at 455. As discussed, Cisco has provided inadequate (if any) evidence that Peter Schulter is an inventor of the '430 patent's claims.

### 4.      Cisco misrepresents inventor testimony.

In an effort to conjure up evidence, Cisco twists testimony from inventors to argue that Mr. Schulter is an inventor. While avoiding saying it, Cisco is accusing these inventors of lying in their sworn declarations agreeing or not disagreeing with removing Mr. Schulter.

For example, Cisco points to inventor Max Smith's testimony. But Mr. Smith explained that he could only speak to who contributed to the *product*, not who contributed to the *patent*. SOF#47. Similarly inventor Paul Curtis testified that Mr. Schulter "was responsible for the software" (*i.e.*, building the product). SOF#48. And Mr. Schulter himself stated that he "wrote" code and specifications, but did not contradict his sworn declaration that he should not be a named inventor. SOF#46.

Cisco's only other evidence consists of testimony from Mr. Smith and inventor Alan Greenspan that the September 29, 2000 conception document does not include text that "resembles" (Mr. Smith) or a "specific reference" (Mr. Greenspan) to "virtual LAN proxy."

SOF#49-50. But Mr. Greenspan testified that although the September 29 document was "a higher-level architecture document," it has discussions related to "virtual LAN proxy" functionality. SOF#49. And inventor Scott Geng testified that Mr. Schulter did not conceive of "virtual LAN proxy" and pointed to evidence of conception in the September 29 document. SOF#50. In any event, the question is not who authored a document or whether a conception document "resembles" or makes a "specific reference" to a specific phrase such as "LAN proxy." The question is who conceived of the claims. Cisco has no evidence—much less clear and convincing evidence—that Mr. Schulter conceived of any part of the '430 patent claims.

E.      **Conclusion**

Cisco does not—and cannot—provide clear and convincing evidence to support its assertions regarding deceptive intent or materiality. Summary judgment should be granted.

## III.    MOTION FOR SUMMARY JUDGMENT OF NO IMPROPER INVENTORSHIP[4]

A.      **Statement of Certain Material Facts**

Egenera incorporates by reference its inequitable conduct facts. *See* Section II.B, *supra*.

B.      **Argument**

As discussed in Section II.D, *supra*, Peter Schulter is not an inventor of the claims of the '430 patent. Eleven fact witnesses and two experts have answered the question. SOF#2-3, 20-22, 51. Ignoring this mountain of evidence, Cisco suggests that Mr. Schulter conceived of "emulating Ethernet functionality" and the "virtual LAN proxy" that is part of the Court's construction of the "logic to modify" term. SOF#42. Cisco is wrong factually and legally. As to "emulating Ethernet functionality," Mr. Schulter has clearly testified that the concept was known to Egenera before he joined the company. SOF#46; Section II.D, *supra*. As to "virtual LAN

---

[4] On August 6, 2018, Cisco notified Egenera by email that it no longer asserts improper inventorship based on Phil Auld not being listed as an inventor.

proxy," Cisco confuses authorship (including of a term instead of an idea) with inventorship, and ignores the testimony of inventors. SOF#34, 46, 48-50; Sections II.D.3 & II.D.4, *supra*.

Even if the Court were inclined to give Cisco the opportunity to attempt to present evidence on inventorship, Cisco has not—and cannot—show intent to deceive. *See* Section II.D.1, *supra*. Correction, not invalidation, is therefore an inappropriate remedy assuming improper inventorship under 35 U.S.C. § 256(b). *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-04990, 2012 U.S. Dist. LEXIS 88567, at *7-9 (N.D. Cal. Jun. 7, 2012) (citing *Shields v. Halliburton Co.*, 667 F.2d 1232, 1236 (5th Cir. 1982) ("[T]he remedy for innocent misjoinder is correction, and not invalidation.")). And in light of the lack of evidence of ill intent, inventorship is for the Court and not a jury to decide. *Id.* at *9 ("Because the issue of whether Johar should have been listed as one of the inventors of the '917 Patent is not dispositive of the affirmative defense of invalidity, the Court finds that evidence regarding Johar's possible inventorship is not relevant and is likely to confuse the jury.").

## IV.   MOTION FOR SUMMARY JUDGMENT ON CISCO'S EQUITABLE DOCTRINES DEFENSES[5]

### A.   Overview of the Motion

Keeping with its kitchen sink approach, Cisco alleges that Egenera's claims are barred "by the doctrines of waiver, acquiescence, laches, estoppel, exhaustion, implied license, patent misuse, and/or unclean hands." SOF#60. Egenera requested that Cisco articulate the factual and legal bases for these affirmative defenses. SOF#61. Although Cisco responded on multiple occasions, Cisco has put forward no legally sufficient basis for the defenses. SOF#62-66.

---

[5] On August 6, 2018, Cisco notified Egenera by email that it no longer asserts the equitable defenses of patent misuse or exhaustion.

## B.      Statement of Certain Material Facts

Egenera incorporates by reference its inequitable conduct facts. *See* Section II.B, *supra*.

Cisco's equitable doctrine defenses were first pled on February 28, 2017, and have not changed since. SOF#56-60. Egenera sought the factual and legal bases for Cisco's equitable doctrine defenses via interrogatory from Cisco, but Cisco has provided little, if any explanation for these defenses. SOF#61-66. Cisco has also stated that it did not know of the '430 patent until its registered agent was served with Egenera's complaint on August 8, 2016. SOF#67-68.

## C.      Argument

### 1.      Cisco provided no factual or legal basis for (1) waiver; (2) acquiescence; (3) implied license; and (4) unclean hands.

Cisco has not provided any factual or legal bases for its waiver, acquiescence, implied license, or unclean hands defenses. SOF#61-66. "[I]f a party resists summary judgment by pointing to a factual dispute on which it bears the burden of proof at trial [e.g., an affirmative defense], that party must point to evidence affirmatively tending to prove the fact in its favor." *Fed. Deposit Ins. Corp.*, 82 F.3d at 526 (1st Cir. 1996). Because Cisco failed to identify such bases for these affirmative defenses, summary judgment is appropriate.

### 2.      Laches is not a legally available defense.

On March 21, 2017, the Supreme Court held that "[l]aches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by §286." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, LLC, 137 S. Ct. 954, 967 (2017). As a result, laches is no longer a viable defense and summary judgment is appropriate.

### 3.      Cisco's evidence fails to show the elements of equitable estoppel.

An equitable estoppel defense requires that "(1) [Egenera] misled [Cisco] into believing that it would not enforce its patents against [Cisco]; (2) [Cisco] relied on the misleading conduct;

14

and (3) [Cisco] was materially prejudiced." *Exergen Corp. v. Kaz USA, Inc.*, No. 1:13-cv-10628-RGS, slip op. at 1 (D. Mass. Feb. 12, 2016) (Ex. 34) (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)). Cisco has failed to articulate, or even allege, any of the three requirements for an equitable estoppel claim. SOF#62-66. And Cisco's allegation that it did not know of the '430 patent until being served with this lawsuit, SOF#67-68, is grounds for granting summary judgment as it is contrary to all three equitable estoppel requirements. *Aukerman*, 960 F.2d at 1042 ("It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware…of the patentee and/or its patent.").

## V.   MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION

### A.   Overview of the Motion

Cisco fails to put forth evidence that any alleged prior art reference, standing alone, teaches each and every limitation of the '430 patent. Each reference is missing at least one claim limitation. The Court should grant summary judgment of no anticipation under 35 U.S.C. § 102.[6]

### B.   Statement of Certain Facts

#### 1.   The '430 patent.

The '430 patent claims platforms for, and methods of, "automatically deploying at least one virtual processing area network, in response to software commands." SOF#69. The annotated '430 patent Figure 1 below shows some of the relevant components of the claimed inventions. SOF#70.

---

[6] The references also fail to render the claims obvious under 35 U.S.C. § 103, and each reference is missing more limitations than discussed. Egenera's motion is narrowly tailored to address only the issue of anticipation, and only as to non-exclusive limitations discussed.



FIG. 1

The claimed inventions virtualize the previously-complex infrastructure, in part, through the use of a "control node" (above in red) and the creation and operation of virtual processing area networks or PANs. SOF#70-73. To create a virtual processing area network, the platform or method "receiv[es] and respond[s] to … software commands." SOF#71. The "software commands specify[] (i) a number of processors [above in purple] for a virtual processing area network; (ii) a virtual local area network topology defining interconnectivity and switching functionality among the specified processors of the virtual processing area network; and (iii) virtual storage space for the virtual processing area network." SOF#72. The platform or method is then able to "configur[e]," "select," or "program[]" a PAN corresponding to that described in the software commands. SOF#73.

Once deployed, "[t]he virtualized processing area network (PAN) may then be used to execute customer specific applications, such as web-based server applications." SOF#76. The "control node" communicates with "computer processors" over the "internal communication network" (above in green). SOF#77. For example, the control node may receive "messages from the … computer processors" and then modify the messages before transmitting the messages to the external communication or storage networks. SOF#78. "By providing such a platform,

16

processing resources may be deployed rapidly and easily through software via configuration commands, e.g., from an administrator, rather than through physically providing servers, cabling network and storage connections, providing power to each server and so forth." SOF#79.

### 2. Cisco's '430 patent *inter partes* review petition.

Cisco filed an IPR petition regarding the '430 patent with the USPTO on April 28, 2017. SOF#80. Cisco's petition alleged that the '430 patent was obvious—*not anticipated*—based on the combination of U.S. Patent Nos. 6,597,956, 7,089,293, and 6,639,901. SOF#81. The USPTO rejected Cisco's request to institute an IPR of the '430 patent, holding that Cisco "fails to meet its burden in establishing a reasonable likelihood of prevailing on its challenge." SOF#82-83.

The USPTO held—using a broader claim construction standard and lower burden of proof to show invalidity than this Court—that Cisco's combination of prior art failed to "teach[] or suggest[] the 'control node' limitation" in the '430 patent. SOF#83-85. "This limitation requires the control node both be connected to the internal communication network and to receive messages from the plurality of computer processors." SOF#86. The USPTO held that Cisco did "not sufficiently establish or explain how the proposed combination discloses both the control node and the internal network to which the control node is coupled." SOF#87-88.

### 3. Cisco's invalidity defense and contentions.

Cisco served its original invalidity contentions prior to the USPTO decision. In those contentions, Cisco alleged anticipation based on eight U.S. Patents. SOF#89-90. Cisco also alleged anticipation based on eight non-patent references, SOF#91, and five different "systems," SOF#92. Cisco later added the two U.S Patents which were asserted as prior art in its failed IPR bid: U.S. Patents Nos. 6,597,956 and 7,089,293. SOF#93-97.

Cisco served an expert report on invalidity from Dr. Kevin Jeffay. In that report, Dr. Jeffay opined as to anticipation by ten U.S. Patents, five non-patent references, and four different

"systems." SOF#98-137. Egenera served an expert report from Dr. Jones explaining that Dr. Jeffay failed to show anticipation. SOF#138-139.

### C.      Anticipation Legal Standard

Patents are presumed valid, 35 U.S.C. § 282, and invalidity—including anticipation under 35 U.S.C. § 102[7]—must be proven by clear and convincing evidence, *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2242 (2011). "A patent is invalid for anticipation under 35 U.S.C. § 102 if a *single* prior art reference discloses each and every limitation of the claimed invention." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014); *see also Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010) ("[I]nvalidity by anticipation requires that the four corners of a single[] prior art document describe every element of the claimed invention, either expressly or inherently.").

### D.      Each Alleged Prior Art Reference Is Missing At Least One Limitation

The independent claims of the '430 patent include common limitations. For example, the independent system claims (*i.e.*, 1, 3, 4) each include the limitation that there be "a plurality of computer processors connected to an internal communication network" and "wherein the at least one control node is connected to the internal communication network and thereby in communication with the plurality of computer processors." SOF#74. A similar limitation— "providing a platform having a plurality of computer processors and at least one control node connected to an internal communication network"—is found in the independent method claims (*i.e.*, 5, 7, 8). SOF#75.

Cisco includes hundreds of pages of copied and pasted text and images from a variety of sources in its invalidity contentions, but this cannot hide Cisco's failure of proof as to

---

[7] As the '430 patent stems from an application filed before enactment of the America Invents Act ("AIA"), the pre-AIA version of 35 U.S.C. § 102 applies in this case.

anticipation. Each of Cisco's alleged prior art references fails to teach—explicitly or inherently—the claimed "internal communication network" "connected to" both "at least one control node" and the "plurality of computer processors."

To the extent Cisco disagrees, it should at least be able to fill in the below chart for each allegedly anticipating reference—including by pointing to a distinct element within the alleged prior art references disclosing each claimed component.

| Reference | (A) "computer processors" | (B) "internal communication network" / how "connected to" (A) & (C) | (C) "control node" |
|-----------|---------------------------|----------------------------------------------------------------------|---------------------|
|           |                           |                                                                      |                     |

Cisco's failure to articulate how distinct elements in the prior art reference disclose each component in the '430 patent claims is an ongoing problem for Cisco. The inarticulate nature of Cisco's invalidity case was one of the reasons the USPTO rejected Cisco's IPR petition. SOF#85-87. The USPTO held that Cisco did "not sufficiently establish or explain how the proposed combination discloses both the control node and the internal network to which the control node is coupled." SOF#87. This continues to be true in this litigation for all of Cisco's references. SOF#102-137.

For instance, for the Cisco Catalyst System, Cisco does not articulate what distinct components of the "system" disclosure the claimed "computer processors," "internal communication network," or "control node." SOF#102. Nor does Cisco articulate how the "internal communication network" is "connected to" the "computer processors" and "control node" for the Cisco Catalyst System. SOF#103. Instead, Cisco simply makes generic reference to "a plurality of computers connected to the Catalyst switch in a VLAN" and how that same "Catalyst switch" "connects VLANs of computers to external storage networks and external communication networks." SOF#102-103; Ex. 41 at 18, 23. If Cisco is suggesting that the

"Catalyst switch" is both the "control node" and "internal communication network," then Cisco is making the same incoherent argument already rejected by the USPTO.

**E.      Conclusion**

Cisco does not—and cannot—provide clear and convincing evidence to support its anticipation defense. Summary judgment should be granted.

## VI.    CONCLUSION

For the reasons outlined above, Egenera requests that the Court grant summary judgment as to the following Cisco defenses: (1) inequitable conduct; (2) improper inventorship; (3) equitable doctrines; and (4) anticipation.

Dated: August 8, 2018

Respectfully submitted,

By: /s/Christopher T. Bovenkamp
Mike McKool (admitted pro hac vice)
TX Bar No. 13732100
mmckool@mckoolsmith.com
Christopher T. Bovenkamp (admitted pro hac vice)
TX Bar No. 24006877
cbovenkamp@mckoolsmith.com
Avery R. Williams (admitted pro hac vice)
TX Bar No. 24075282
awilliams@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

John B. Campbell (admitted pro hac vice)
TX Bar No. 24036314
jcampbell@mckoolsmith.com
James. E. Quigley (admitted pro hac vice)
TX Bar No. 24075810
jquigley@mckoolsmith.com
Jordan Z. Carson (admitted pro hac vice)
Texas State Bar No. 24101599
jcarson@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Fax: (512) 692-8744

David L. Evans (BBO #156695)
devans@murphyking.com
Steven M. Veenema (BBO #672097)
sveenema@murphyking.com
MURPHY & KING, P.C.
One Beacon Street, 21st Fl.
Boston, Massachusetts 02108-3107
Telephone: (617) 423-0400
Fax: (617) 423-0498

COUNSEL FOR PLAINTIFF
EGENERA, INC.

21

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document filed through the Electronic Case Filing ("ECF") system on August 8, 2018, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


*/s/ Christopher T. Bovenkamp*
Christopher T. Bovenkamp