# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EGENERA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | Civil Action No. 1:16-cv-11613<br><br>JURY TRIAL DEMANDED |

## CISCO SYSTEMS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES, INDIRECT INFRINGEMENT, OR WILLFULNESS

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................2

    A.  The '430 Patent ...........................................................................................2

    B.  Egenera's Alleged Marking ........................................................................3

    C.  Egenera / Cisco Interactions ......................................................................4

    D.  Cisco's Patent Prosecutions .......................................................................5

III.  LEGAL STANDARD............................................................................................5

    A.  Summary Judgment ....................................................................................5

    B.  Marking.......................................................................................................6

    C.  Indirect Infringement .................................................................................7

    D.  Willful Infringement ..................................................................................7

    E.  Willful Blindness .......................................................................................8

IV.  ARGUMENT ........................................................................................................8

    A.  Egenera Cannot Recover Pre-suit Damages Because It Did Not Comply
        With The Requirements Of 35 U.S.C. § 287(a).........................................8

        1.  Egenera Did Not Provide Constructive Notice Of The '430 Patent
            Through Marking. ........................................................................9

            a.  Egenera Did Not Mark Physical Products Alleged To
                Embody The '430 Patent Or Their Packaging As Required
                By § 287(a). .....................................................................9

            b.  Egenera's Alleged Virtual Marking Also Fails Because It
                Did Not Associate Any Specific Product With Egenera's
                Patents. .........................................................................11

            c.  Egenera Cannot Meet Its Burden To Show That Its
                "Marking" Was Substantially Consistent And Continuous. ..........12

        2.  Egenera Has No Evidence Of Pre-Suit Actual Notice...............13

i

**TABLE OF CONTENTS (cont'd)**

Pages

B.    The Court Should Grant Summary Judgment Of No Pre-Suit Indirect Infringement And No Pre-Suit Willful Infringement Because Cisco Did Not Have Pre-Suit Knowledge Of The '430 Patent And Any Alleged Infringement....................................................................................14

    1.    Egenera's Allegations Regarding Its Communications With Cisco Do Not Show Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement. ...............................................................15

    2.    Egenera's Allegations That Cisco Purchased A BladeFrame Does Not Show Pre-suit Knowledge Of The '430 Patent Or Any Alleged Infringement...............................................................17

    3.    Cisco's Hiring Of Former Egenera Employees Do Not Show Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement. ........17

    4.    Egenera's Allegations That Cisco's Prosecution Counsel Or The Patent Office Cited The '430 Patent In The Prosecution Of Four Cisco Patents Do Not Show Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement.........................................18

    5.    Egenera's Allegations That It Posted Online Articles About The Issuance Of The '430 Patent Do Not To Show That Cisco Had Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement. ........19

C.    The Court Should Grant Summary Judgment Of No Post-Suit Indirect Infringement And No Post-Suit Willful Infringement Because The Undisputed Evidence In This Case Is That Since Learning Of The '430 Patent Through Egenera's Complaint, Cisco Had a Good Faith Belief That It Did Not Infringe The '430 Patent......................................................20

V.    CONCLUSION..................................................................................20

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) ............................................................. 6, 10, 12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ......................................................................... 6

*Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*,
  No. 15-cv-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018) ...................... 20

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) ......................................................... 6, 12

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964) ......................................................................... 7

*Blazer v. eBay, Inc.*,
  No. 15-cv-01059-KOB, 2017 WL 1047572 (N.D. Ala. Mar. 20, 2017) ..................... 8, 20

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015) ................................................................... 7, 14, 20

*Cont'l Circuits LLC v. Intel Corp.*,
  No. 16-cv-2026-DCG, 2017 WL 679116 (D. Ariz. Feb. 21, 2017) ........................ 14, 16

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ....................................................................... 7, 8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) .................................................................... 7

*Illinois Tool Works, Inc. v. MOC Prod. Co., Inc.*,
  No. 09-cv-1887-JLS, 2010 WL 11442912 (S.D. Cal. Dec. 6, 2010) ...................... 13

*Kadant Johnson, Inc. v. D'Amico*,
  No. 10-cv-2869, 2012 WL 38319 (E.D. La. Jan. 9, 2012) .............................. 10

*Lans v. Digital Equip. Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001) .......................................................... 6

*Largan Precision Co, Ltd v. Genius Elec. Optical Co.*,
  No. 13-cv-02502-JD, 2015 WL 2063988 (N.D. Cal. May 4, 2015), *aff'd*, 646 Fed.
  App'x 946 (Fed. Cir. 2016) ............................................................... 20

### TABLE OF AUTHORITIES (cont'd)

**Pages**

*Massachusetts Inst. of Tech. v. Abacus Software, Inc.*,
    No. 501-cv-344, 2004 WL 5268125 (E.D. Tex. Sept. 29, 2004)......................................13

*McKesson Automation, Inc. v. Swisslog Italia S.P.A.*,
    712 F. Supp. 2d 283 (D. Del. 2010)................................................................10

*Metrologic Instrs, Inc. v. PSC, Inc.*,
    No. 99-cv-4876-JBS, 2004 WL 2851955 (D.N.J. Dec. 13, 2004)....................................11

*Olaf Soot Design LLC v. Daktronics, Inc.*,
    No. 15-cv-5024-RWS, 2018 WL 3462510 (S.D.N.Y. July 18, 2018)..............7, 14, 18, 19

*Procter & Gamble Co. v. McNeil-PPC, Inc.*,
    615 F. Supp. 2d 832 (W.D. Wis. 2009)..........................................................17

*Radware Ltd. v. A10 Networks, Inc.*,
    No. 13-cv-2021-RMW, 2013 WL 5373305 (N.D. Cal. Sept. 24, 2013)...........................18

*Radware, Ltd. v. F5 Networks, Inc.*,
    No. 5:13-cv-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016)...............14, 19

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
    No. 13-cv-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017)............................8

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    34 F. Supp. 3d 1061 (C.D. Cal. 2014) ........................................................6, 10

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. 11-cv-06638-RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) .............................16

*Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*,
    983 F. Supp. 2d 700 (E.D. Va. 2013) ..........................................................16

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016).................................................................7, 14

## Statutes

35 U.S.C. § 287(a) ...............................................................................passim

35. U.S.C. § 284................................................................................7

## Rules

Fed. R. Civ. P. 56(a) ..............................................................................6

## I.     INTRODUCTION

Two years into this case, with fact and expert discovery now closed, Egenera cannot prove its pre-suit damages, willful patent infringement, and indirect patent infringement claims.

First, the Court should enter summary judgment that Egenera cannot claim pre-suit damages—an amount it asserts is over $440 million—because it did not comply with the marking or actual notice provisions of 35 U.S.C. § 287(a).  There is no dispute that Egenera did not mark its BladeFrame product with U.S. Patent No. 7,231,430 (the "'430 Patent") or provide Cisco actual notice that it infringed that patent. Recognizing those facts, Egenera claims that it "virtually" marked its embodying product through references to a portion of its corporate website.  But Egenera cannot establish "virtual marking" because: (1) the alleged virtual marking was not on the product itself;  (2) the website listed in its user manual was not continuously available during the pre-suit period; (3) no proof exists as to the contents of that website during the pre-suit period; and, (4) the website at most included a bare list of patent numbers and titles without identifying any association (as is required by § 287(a)) between any Egenera product and any specific patent. Because Egenera neither actually marked, virtually marked, nor provided actual notice of infringement, Egenera cannot claim pre-suit damages.

Second, Egenera cannot maintain claims of pre-suit indirect infringement and pre-suit willful infringement because Egenera cannot demonstrate that Cisco had pre-suit knowledge of the '430 Patent or knowledge of its alleged infringement.  Knowledge of the patent and what activity is alleged to be infringing is a prerequisite to indirect infringement and willful infringement.  At most, Egenera *speculates* that *someone* at Cisco *may* have had some knowledge of the '430 Patent prior to the filing of this lawsuit.  But those assertions are insufficient as a matter of law to demonstrate knowledge of the '430 Patent or alleged infringement.   Absent such

knowledge, Cisco cannot indirectly or willfully infringe the '430 Patent.  The Court should enter summary judgment of no pre-suit indirect or willful infringement.

Finally, there is no evidence of willful or indirect infringement (pre- or post-suit) because since Cisco received notice of the '430 Patent and Egenera's infringement allegations, Cisco has maintained a good-faith belief that it does not infringe.  Cisco (including employees who worked on the accused products) investigated Egenera's infringement claims and concluded in good-faith that the '430 patent does not cover the accused product in this case—Cisco's Unified Computing System ("UCS").  That evidence is unrebutted, and the Court should enter summary judgment of no indirect or willful infringement.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.      The '430 Patent

1.      The '430 Patent issued on June 12, 2007.  Ex. 1 ('430 Patent) at 1.[1]

2.      On June 11, 2007, Peter Manca sent a companywide email announcing that the Patent Office "granted" the '430 Patent.  Ex. 38 (EGENERA01567366).

3.      The '430 Patent was not attached to that email.  Ex. 38 (EGENERA01567366).

4.      The former Egenera employees later employed at Cisco and deposed in this case testified to having no recollection of receiving the Egenera email announcing the issuance of the '430 Patent.  Ex. 23 (G. Chen Dep. Tr.) at 29; Ex. 24 (Clark Dep. Tr.) at 38-39; Ex. 25 (Hinson Dep. Tr.) at 72-73; Ex. 13 (Shaw Dep. Tr.) at 166-167.

5.      Egenera also issued a press release in July 2007 announcing the issuance of the '430 Patent.  Ex. 40 (EGENERA02280815).

---

[1]  Exhibits are attached to the declaration of Michael Rhodes, filed concurrently.

6.      There is no evidence that Cisco or its employees ever read any of the press releases about the '430 Patent grant.

**B.      Egenera's Alleged Marking**

7.      According to Egenera, in September 2012, Egenera added the following language to the second page of its electronic user guide for PAN Manager:

# Copyright

Copyright © 2011-12 Egenera, Inc. All rights reserved. This product is protected by U.S. and international copyright and intellectual property laws. Egenera products are covered by one or more patents listed at http://www.egenera.com/patents.

Ex. 41 (EGENERA00339795) at '796; Ex. 34 (Egenera's Suppl. Resp. to Cisco Interog. No. 5) at 19.  The website http://www.egenera.com/patents did not exist before August 2012.  Ex. 26 (Kerrigan Dep. Tr.) at 248:25-249:3.

8.      The website http://www.egenera.com/patents contained the following information in August 2017:

| PAT. NO | Title |
| --- | --- |
| 8,086,755 | Distributed multicast system and method in a network |
| 7,861,110 | System, method, and adapter for creating fault-tolerant communication busses from standard components |
| 7,809,546 | System and method for emulating serial port communication |
| 7,787,388 | Method of and a system for autonomously identifying which node in a two-node system has failed |
| 7,305,581 | Service clusters and method in a processing system with failover capability |
| 7,296,182 | Disaster recovery for processing resources using configurable deployment platform |
| 7,231,430 | Reconfigurable, virtual processing system, cluster, network and method |
| 7,228,265 | System< and method for emulating serial port communication |
| 7,178,059 | Disaster recovery for processing resources using configurable deployment platform |
| 7,174,390 | Address resolution protocol system and method in a virtual network |
| 7,032,108 | System and method for virtualizing basic input/output system (BIOS) including BIOS run time services |
| 6,971,044 | Service clusters and method in a processing system with failover capability |
| 6,953,232 | Latching mechanism for securing a computer component into a housing |
| 6,927,974 | Simplified power and data connector for use with chassis system that houses multiple processors |

Ex. 34 (Egenera's Suppl. Resp. to Cisco Interog. No. 5) at 20.  That website was unavailable (at least) during the weeks before Egenera commenced this action.  Ex. 26 (Kerrigan Dep. Tr.) at 252:13-253:19, 255:17-257:9, 263:8-265:17, 270:15-271:22; Ex. 42 (EGENERA02280905); Ex. 43 (EGENERA02280906).

9.      Egenera sold the BladeFrame product with PAN Manager between 2012 and 2016. Ex. 34 (Egenera's Suppl. Resp. to Cisco Interog. No. 6) at 21-22.

C.      **Egenera / Cisco Interactions**

10.     Egenera employees communicated with Cisco employees in 2002, 2004, 2008, and 2009.  Ex. 35 (Egenera's Suppl. Resp. to Cisco Interog. No. 8) at 12-16.

11.     No Egenera employee who attended any meeting with Cisco mentioned the '430 Patent number, the '430 Patent Application, or alleged that Cisco infringed the '430 Patent.  Ex. 21 (Manca Dep. Tr.) at 53:2-18; Ex. 29 (Brownell Dep. Tr.) at 219:13-20; Ex. 34 ((Egenera's Suppl. Resp. to Cisco Interog. No. 5) at 18-21; Ex. 35 (Egenera's Suppl. Resp. to Cisco Interog. No. 8) at 12-16.

12.     Mike Thompson, Egenera's then-CEO and the ***sole Egenera attendee*** of the 2008 in-person meeting between Cisco and Egenera did not identify the '430 Patent to Cisco or assert that Cisco infringed the '430 Patent.  Ex. 20 (Thompson Dep. Tr.) at 188:1-10, 190:10-14. Similarly, in Egenera's only alleged communication with Cisco in 2009, Mr. Thompson sent an unsolicited email to John Chambers, Cisco's then-CEO, which did not identify the '430 Patent. Ex. 39 (EGENERA02280908).

13.     In 2004, Cisco acquired a BladeFrame.  Ex. 46 (CISCO00029297).

14.     Brian Christensen, Cisco's corporate designee on the 2004 purchase of the BladeFrame explained that fewer than 10 Cisco employees has access to the lab with the BladeFrame in it.  Ex. 22 (Christensen Dep. Tr.) at 33:12-18.

15.     Hundreds of people work on UCS at Cisco.  Ex. 18 (Jayakrishnan Dep. Tr.) at 211:1-24.

16.     Cisco has hired approximately three dozen former Egenera employees.  Ex. 61 (Cisco's Suppl. Resp. to Egenera Interog. No. 15 (Renumbered as No. 20) at 46-49.

17.     Of those former employees, none are inventors of the '430 Patent.  Ex. 61 (Cisco's Suppl. Resp. to Egenera Interog. No. 15 (Renumbered as No. 20) at 46-49; Ex. 1 ['430 Patent] at 1.

18.     Egenera lacks any proof that any former Egenera employee that Cisco later employed had knowledge of the '430 Patent, or told anyone at Cisco about '430 Patent.

**D.     Cisco's Patent Prosecutions**

19.     During prosecution of three of Cisco's 14,000 patents, the PTO cited the '430 Patent.  Ex. 55 (File History U.S. Patent No. 7,526,527); Ex. 56 (File History U.S. Patent No. 7,664,823); Ex. 57 (File History U.S. Patent No. 7,808,924).

20.     The PTO did not use the '430 Patent as the basis for any non-final or final rejection of any of Cisco's Patents.  Ex. 7 (Jeffay Rebuttal Report) ¶¶ 276-279.

21.     In the course of prosecuting one of Cisco's 14,000 patents, Cisco's outside prosecuting counsel cited the '430 Patent in an information disclosure statement to the PTO. Ex. 54 (File History U.S. Patent No. 7,437,477).

**III.    LEGAL STANDARD**

**A.     Summary Judgment**

Summary judgment should be entered when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### B.    Marking

In order to recover pre-suit damages, a patentee must comply with 35 U.S.C. § 287(a) ("the marking statute").  Section 287(a) requires a patentee to affix the word "patent" or the abbreviation "pat." and his or her patent number to his or her patented products (*i.e.*, to "mark" the product with the patent number).  *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 n. 13 (Fed. Cir. 1993).  The patent owner may "virtually mark" by affixing the word "patent" or "pat." (on the product or its packaging, if the product cannot be marked) together with an address of a posting on the Internet that associates the patented article with the number of the patent.  35 U.S.C. § 287(a).

"The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366, 1368 (Fed. Cir. 2017).  The burden shifts back to the patentee to demonstrate that "substantially all of its [patented] products were marked."  *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 34 F. Supp. 3d 1061, 1096–97 (C.D. Cal. 2014).  "[O]nce marking has begun, it must be substantially consistent and continuous."  *Am. Med. Sys.*, 6 F.3d at 1537.

If a patentee fails to mark, the patentee cannot seek pre-suit damages absent providing actual notice of the infringement. 35 U.S.C. § 287(a).  Actual notice requires the patentee to inform the accused infringer of:  (1) the patent; and (2) the alleged infringement of the patent.  *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001).

### C.      Indirect Infringement

To indirectly infringe a patent, among other things, the alleged indirect infringer must have knowledge of the patent and knowledge of the alleged infringement of the patent, or be willfully blind to those facts.  *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760-61 (2011) (concerning induced and contributory infringement).  There is no liability for indirect infringement through inducing infringement or contributing to another's infringement if the accused infringer does not have such knowledge.  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting *Glob.-Tech*, 563 U.S. at 766 concerning inducement) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) concerning contributory infringement).

### D.      Willful Infringement

An alleged infringer can also be liable for willful patent infringement where there is a finding that his conduct was egregious.  35. U.S.C. § 284.  "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  Knowledge of, or willful blindness to, the patent and the alleged infringement is a prerequisite to a finding of willfulness.  *E.g.*, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1932-33); *Halo Elecs.*, 136 S. Ct. at 1930 (explaining that the subjective belief of the alleged infringer as to the alleged infringement remains a requirement to a finding of willfulness).  Infringement cannot be willful where an accused infringer has a good faith belief of noninfringement.  *See Olaf Soot Design LLC v. Daktronics, Inc.*, No. 15-cv-5024-RWS, 2018 WL 3462510, at *6 (S.D.N.Y. July 18, 2018) (granting summary judgment that post-suit sales of allegedly infringing product, made under a reasonable belief of noninfringement, do not support a finding of willfulness)*; Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29,

2017) (holding that a defendant's subjective belief that the plaintiff's infringement case is without

merit precludes a finding of willfulness).

### E.      Willful Blindness

A finding of willful blindness requires:  "(1) the defendant must subjectively believe that

there is a high probability that a fact exists and (2) the defendant must take deliberate actions to

avoid learning of that fact." *Glob.-Tech*, 563 U.S. at 769.

> To satisfy the requirement for subjective belief of infringement, the
> defendant must "almost be said to have actually known the critical
> facts." [*Glob.-Tech*, 563 U.S.] at 769–70. To satisfy the second
> prong, a plaintiff must show not merely deliberate indifference but
> intentional ignorance that surpasses recklessness and negligence.

*Blazer v. eBay, Inc.*, No. 15-cv-01059-KOB, 2017 WL 1047572, at *6 (N.D. Ala. Mar. 20, 2017).

## IV.      ARGUMENT

### A.      Egenera Cannot Recover Pre-suit Damages Because It Did Not Comply With The Requirements Of 35 U.S.C. § 287(a).

There is no dispute that: (i) Egenera sold and did not mark products with the number of the

'430 Patent that it alleges embody the '430 Patent; and (ii) Egenera did not provide actual notice

of the '430 Patent or its alleged infringement to Cisco until the filing of this lawsuit.  Thus,

Egenera's *only* basis to claim pre-suit damages is its alleged compliance with the post-AIA "virtual

marking" amendment to Section 287.  But Egenera did not comply with those virtual marking

provisions as a matter of law, and no reasonable jury could find that Egenera "virtually" marked

its product.

Egenera's alleged virtual marking of its products is insufficient under § 287(a) for four

reasons.  First, Egenera's purported virtual marking was not effective because the marking was

not on the products (or even product packaging), but instead was within an electronic user manual

file contained on a DVD that was included as a separate "media kit."  Second, the website Egenera

listed in that electronic manual did not correlate Egenera's patents to any allegedly embodying products. Third, Egenera's only proof of the contents of the website is from 2017, after Egenera filed suit. Fourth, Egenera's alleged marking could not have been "substantially consistent and continuous" because Egenera concedes that its website was unavailable for indeterminate periods of time between 2012 and 2016. For any and all those reasons, no reasonable juror could find that Egenera complied with the requirements of 35 U.S.C. § 287(a).[2]

        **1.**      **Egenera Did Not Provide Constructive Notice Of The '430 Patent Through Marking.**

            **a.**      **Egenera Did Not Mark Physical Products Alleged To Embody The '430 Patent Or Their Packaging As Required By § 287(a).**

Egenera did not comply with any of the marking options under § 287(a). As an initial matter, Egenera does not contend that any marking took place before September 2012. Egenera admits that "Egenera's BladeFrame System, when relevant hardware and software were included, embodied at least one claim of U.S. Patent No. 7,231,430." Ex. 36 (Egenera Suppl. Resp. to Cisco's Requests For Admission No. 1) at 7. And there is no dispute that Egenera was "making, offering for sale, or selling within the United States…" the BladeFrame Product between 2012 and 2016. Statement of Undisputed Material Facts ("SUMF") No. 9. Thus, Egenera was required to mark its physical BladeFrame products. 35 U.S.C. §287(a). But Egenera did not mark its physical BladeFrame products at any time and does not assert that it could not mark them because of their physical calendar. SUMF No. 7. *That ends the inquiry as to whether Egenera complied with Section 287(a) regarding marking.* 35. U.S.C. §287(a) ("Patentees . . . may give notice to the public that [any patented article] is patented, either *by fixing thereon* the word "patent" or the abbreviation "pat." together with the number of the patent") (emphasis added); *see Kadant*

---

[2] This motion is moot in the event the Court grants (as is appropriate) Cisco's Motion For Summary Judgment Of Noninfringement Of U.S. Patent No. 7,231,430.

*Johnson, Inc. v. D'Amico*, No. 10-cv-2869, 2012 WL 38319, at *4 (E.D. La. Jan. 9, 2012) (granting summary judgment of non-compliance with Section 287(a) where patentee failed to physically mark patented products and provided no justification for its failure to do so); *Universal Elecs.*, 34 F. Supp. 3d at 1097 (holding that "marking the owner's manual is insufficient [to comply with Section 287(a)] where the product itself is capable of being marked, as is the case here").

Egenera does not assert that its BladeFrame product could not be marked, but nonetheless contends that it complied with § 287(a) because beginning in 2012, BladeFrame/PAN Manager electronic user guides referenced an Egenera website that lists Egenera patents.  SUMF No. 7.  That electronic user guide was included as part of a separate "media kit" sent (separately) to each customer that purchased PAN Manager.  Ex. 26 (Kerrigan Dep. Tr.) at 181:1-11.  As such, a user could open the BladeFrame (or Dell with PAN Manager) packaging and use the product without encountering Egenera's alleged marking.  SUMF No. 7.  Even an inspection of the media kit would not reveal Egenera's alleged marking, which was not on the packaging of the media kit, or on the label of the DVD.  SUMF No. 7.  Instead, a customer would have to load the media kit DVD into a computer, open the correct electronic document within that DVD (the user guide), and then scroll to the second page of that user guide to find the citation to Egenera's website.  SUMF No. 7.  But by its terms, marking under § 287(a) is intended to provide notice not hidden beneath such layers of steps.  *Am. Med. Sys.*, 6 F.3d at 1538 (Fed. Cir. 1993) ("The purpose of the constructive notice provision is to give patentees the proper incentive to mark their products and thus place the world on notice of the existence of the patent.") (internal quotations omitted).

In any case, marking a piece of software associated with a system that embodies the patent is insufficient to comply with § 287(a).  For example, in *McKesson Automation, Inc. v. Swisslog Italia S.P.A.*, the court found that displaying the relevant patent numbers on the log-in screen of a

system ("Robot-Rx" running "Connect-Rx" software) was insufficient to comply with 287(a):

> [A] user has no way of knowing which patents listed on the log-in screen cover which of the multiple products controlled by the Connect–Rx software, or whether the patents cover the Connect–Rx software itself.  The court concludes that the marking displayed by the Connect–Rx software does not sufficiently apprise the public that the Robot–Rx [the hardware system that runs the software] is covered by the patents-in-suit.

712 F. Supp. 2d 283, 296–97 (D. Del. 2010).  Even marking physical user guides that are included in a product's packaging—a more easily accessible form of marking than here—does not comply with § 287(a).  *See, e.g.*, *Metrologic Instrs, Inc. v. PSC, Inc.*, No. 99-cv-4876-JBS, 2004 WL 2851955, at *19–21 (D.N.J. Dec. 13, 2004) (holding that marking user guides shipped with the product was insufficient to comply with § 287(a) and was "a step beyond that which the explicit language of the marking statute contemplates").

The Court should grant summary judgment because no dispute of material fact exists that Egenera did not mark the '430 Patent number on products alleged to embody the '430 Patent, and Egenera did not assert that such marking could not be done due to the character of its products.  Egenera's alleged marking of its electronic user guides is insufficient as a matter of law and thus does not raise any dispute of material fact sufficient to preclude summary judgment.

### b. Egenera's Alleged Virtual Marking Also Fails Because It Did Not Associate Any Specific Product With Egenera's Patents.

If virtual marking via reference to a website is utilized, the website must "associate[] the patented article with the number of the patent."  § 287(a).  That did not occur here.

The alleged marking contained in Egenera's user manual for PAN Manager does not associate any product with the patents listed on the Egenera website.  Instead, the Egenera notice states that "Egenera products are covered by one or more patents listed at http://www.egenera.com/patents."  SUMF No. 7.  That website listed every Egenera patent, and

did not provide *any correlation* between those patents and any products—indeed, it did not identify any products.  SUMF No. 8.  Dr. Jones, Egenera's expert, agreed that the contents of Egenera's website "doesn't include an association or identify an association between specific patents and specific products."  Ex. 11 (Dr. Jones Dep. Tr.) at 110:22-23 ("[W]hat I have depicted here [the website] does not do that.").  Egenera's failure to correlate the patents listed on its website with specific products renders its marking insufficient to comply with Section 287.  SUMF No. 8.

### c.   Egenera Cannot Meet Its Burden To Show That Its "Marking" Was Substantially Consistent And Continuous.

Even if Egenera's virtual marking were effective and even if its website correlated its patents with its products, Egenera cannot meet its burden of proving that its alleged compliance with § 287(a)  was "substantially consistent and continuous."  *Am. Med. Sys.*, 6 F.3d at 1537. Egenera cannot prove:  (1) that the '430 Patent was listed on the website at all, let alone substantially continuously, during 2012-2016; and (2) regardless of content, that the website itself actually was available substantially continuously from 2012-2016.

Egenera's only evidence of virtual marking is what Egenera claims is a screenshot of its patent marking website captured on August 23, 2017, *over a year after* the filing of this action. SUMF No. 8.  There is no evidence in this case of *the pre-suit contents* of its patent-list website. *See Arctic Cat*, 876 F.3d at 1366 ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."); *see* Ex. 11 (Dr. Jones Dep. Tr.) at 109:19-110:2 (conceding that he has no knowledge of the '430 Patent appearing on the website).

That proof is particularly necessary in this case because Egenera admits that its website was *not available* (at least) during the months prior to Egenera filing this action.  SUMF No. 8, *see, e.g.*, Ex. 34 (Egenera's Suppl. Resp. to Cisco Interog. No. 5) at 20; Ex. 26 (Kerrigan Dep. Tr.) at 251:12-18, 253:4-253:21, 255:17-257:9, 263:8-265:17.  Egenera did not monitor that website

from 2012-2016, and there is no evidence of the pre-suit availability of the website. Ex. 26 (Kerrigan Dep. Tr.) at 251:15-18; 253:4-253:21; *see Illinois Tool Works, Inc. v. MOC Prod. Co., Inc.*, No. 09-cv-1887-JLS, 2010 WL 11442912, at *3 (S.D. Cal. Dec. 6, 2010) (finding marking less than 60% of the time to be insufficient). There is no dispute that Egenera's alleged virtual marking website ***was not*** continuously available from 2012 through the beginning of this action. Ex. 11 (Dr. Jones Dep. Tr.) at 108:25-109:5. Thus, Egenera's virtual marking was ineffective to confer constructive notice for those reasons as well.

### 2. Egenera Has No Evidence Of Pre-Suit Actual Notice.

When a patentee fails to sufficiently mark, § 287(a) allows recovery of damages only from the date of actual notice of infringement—*i.e.*, the date on which the patent owner provides a notice to the alleged infringer such that "the recipient is informed of the identity of the patent ***and the activity that is believed to be an infringement***." *Massachusetts Inst. of Tech. v. Abacus Software, Inc.*, No. 501-cv-344, 2004 WL 5268125, at *3 (E.D. Tex. Sept. 29, 2004) (emphasis added). Egenera has alleged:

> Cisco was made aware of the '430 Patent and its relationship with UCS in 2009 through email and/or in person discussions amongst the following: John Morgridge [of Cisco], Ned Hooper [of Cisco], John Chambers [of Cisco], and Mike Thompson [of Egenera]. Specifically, Mr. Thompson made Cisco aware of Egenera's intellectual property and its relevance to Cisco.

Ex. 34 (Egenera's Suppl. Resp. to Cisco Interrog. No. 5) at 21. But there is no document or witness testimony to support that attorney argument. For example, Mr. Thompson, Egenera's then-CEO, testified that he ***did not*** identify the '430 Patent to anyone at Cisco, nor inform anyone at Cisco of its alleged infringement. Ex. 20 (Thompson Dep. Tr.) at 188:1-10; 190:10-14; SUMF No. 12. There is no evidence of actual notice, and the Court should therefore preclude Egenera from recovering pre-suit damages.

**B.     The Court Should Grant Summary Judgment Of No Pre-Suit Indirect Infringement And No Pre-Suit Willful Infringement Because Cisco Did Not Have Pre-Suit Knowledge Of The '430 Patent And Any Alleged Infringement.**

To prove that Cisco indirectly infringed the '430 Patent, Egenera must demonstrate that Cisco had knowledge of the '430 Patent *and* the allegedly infringing acts.  *Commil*, 135 S. Ct. at 1926.  The same knowledge is required for willful infringement, which requires an additional showing of some further misconduct (*e.g.*, egregious conduct) beyond knowledge of infringement.  *See WBIP*, 829 F.3d at 1340 (citing *Halo*, 136 S. Ct. at 1932-33); *Cont'l Circuits LLC v. Intel Corp.*, No. 16-cv-2026-DCG, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017) (granting motion to dismiss where plaintiff failed to allege egregious conduct beyond infringement).  But Egenera cannot even demonstrate that Cisco had pre-suit knowledge of the '430 Patent or the alleged infringement, let alone prove that Cisco's conduct was the type of egregious misconduct required to sustain a claim for willful infringement.  Thus, the Court should grant summary judgment that Cisco did not indirectly or willfully infringe before Egenera filed suit.

Despite not coming forward with any such proof of knowledge, Egenera concocts several theories as to how Cisco may have acquired knowledge of the '430 Patent and Cisco's alleged infringement thereof.  But none of those theories, individually or collectively,[3] can prove that Cisco had knowledge of the patent and any alleged infringement:

1.     Egenera alleges that its employees communicated with Cisco in 2002, 2004, 2008, and 2009, but no evidence exists that Egenera told Cisco about the '430 Patent, let alone its alleged infringement during those communications, all of which occurred before Cisco even released the accused products in mid-2009;

---

[3]  Nor can Egenera make a claim that each of its ***legally insufficient*** facts, taken together, give rise to an inference of knowledge.  *See, e.g.*, *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-cv-02024-RMW, 2016 WL 4427490, at *5 (N.D. Cal. Aug. 22, 2016) (granting JMOL of no willful infringement where multiple facts purported to demonstrate knowledge were held insufficient); *Olaf Soot*, 2018 WL 3462510, at *6 (same; granting summary judgment of no willful infringement).

2.      Egenera asserts that Cisco purchased in 2004 Egenera's BladeFrame product alleged to embody the '430 Patent, but it is undisputed that the product was not marked at the time and there is no evidence that Egenera told Cisco that the product embodies the '430 Patent (which did not exist until years later);

3.      Egenera alleges that Cisco hired former Egenera employees with knowledge of the mere existence of '430 Patent who in turn provided that knowledge to Cisco, but none of Egenera's former employees testified as such, and mere knowledge of the existence of a patent is insufficient as a matter of law;

4.      Egenera alleges that Cisco's patent prosecution counsel cited the '430 Patent in the prosecution of one of Cisco patents, and the Patent Office cited the '430 Patent in three Cisco patent applications, but mere citation of a patent by outside prosecution counsel or the patent office is insufficient as a matter of law; and

5.      Egenera alleges that it announced the issuance of the '430 Patent via press releases in 2007, but there is no evidence that Cisco saw those releases, or had knowledge of the '430 Patent or its alleged applicability to UCS.

In sum, Egenera does not have evidence upon which a reasonable juror could find Cisco had the knowledge required for indirect or willful infringement. Egenera also does not identify any evidence to support the notion that Cisco's alleged infringement is "egregious," "deliberate," or 'wanton," further requiring the entry of summary judgment of no willful infringement.

        **1.      Egenera's Allegations Regarding Its Communications With Cisco Do Not Show Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement.**

Egenera asserts that it interacted with Cisco in 2002, 2004, 2008, and 2009. SUMF No. 10. But Egenera did not disclose the '430 Patent nor identify any alleged infringement in any of its communications with Cisco employees. Instead, Egenera relies on innuendo—allegations that the parties discussed Egenera's technology, but not the '430 Patent application. That is insufficient as a matter of law to meet Egenera's burden.

As an initial matter, Egenera cannot show that Cisco had knowledge of the '430 Patent (let alone alleged infringement) by virtue of the 2002 and 2004 meetings. The '430 Patent did not issue until 2007. SUMF No. 1. Moreover, Egenera has not even indicated that either the 2002 or

2004 meetings included information about the application for the '430 Patent.  The best that Peter

Manca—Egenera's former CEO and corporate representative—could muster at deposition was

that he thought that a PowerPoint presentation from the 2004 meeting mentioned "that Egenera

had patents."  SUMF No. 11.[4]  However, a review of all of the PowerPoint presentations produced

by Egenera related to those meetings reveals that they ***did not*** contain the number of the '430

Patent application.  Ex. 7 (Jeffay Rebuttal Report) ¶184.  Further, a presentation on the technology

embodying a patent application is not sufficient to establish knowledge of a patent.  *See Vasudevan*

*Software, Inc. v. TIBCO Software Inc.*, No. 11-cv-06638-RS, 2012 WL 1831543, at *2 (N.D. Cal.

May 18, 2012); *Cont'l Circuits*, 2017 WL 679116, at *11.  Nor would disclosure of a patent

***application*** number even be sufficient as a matter of law to provide knowledge of a patent.  *See*

*Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 700, 709–10 (E.D. Va.

2013).

Egenera also alleges that it contacted Cisco in 2008 and 2009—after the '430 Patent issued.

But Egenera identifies no facts showing that Cisco gained knowledge of the '430 Patent from those

communications.  For example, in 2008 Egenera emailed Ed Chapman, then a Cisco employee, to

discuss potential partnerships.  However the email and the slides attached to the email did not

mention the '430 Patent.  Ex. 7 (Jeffay Rebuttal Report) ¶259.  Similarly, in late 2008, Egenera's

CEO, Mike Thompson, met with a couple of Cisco employees, but Mr. Thompson confirmed that

he ***never*** identified the '430 Patent or any alleged infringement to Cisco.  SUMF No. 12.

Finally, in 2009, Mr. Thompson, looking to sell the company, sent an unsolicited email to

John Chambers, Cisco's then-CEO.  Ex. 39 (EGENERA02280908).  But Egenera did not identify

---

[4] Mr. Manca also testified that he could not recall specifically which presentations, if any, were
ever shown to Cisco in the 2004 timeframe.  Ex. 21 (Manca Tr.) 138:16-139:1.

the '430 Patent or any Cisco product; instead, it generally commented, looking to solicit a buyer, that "[w]e have relevant IP and patents…."  *Id.*

In sum, taking all of the evidence provided by Egenera regarding the interactions as true, none provides evidence that Cisco had knowledge of the '430 Patent or alleged infringement.

### 2. Egenera's Allegations That Cisco Purchased A BladeFrame Does Not Show Pre-suit Knowledge Of The '430 Patent Or Any Alleged Infringement.

Cisco acquired a BladeFrame in 2004, a product that Egenera admits embodies the '430 Patent.  SUMF No. 13.  But Egenera did not mark the BladeFrame Cisco acquired with the '430 Patent number (which did not issue until 2007).  SUMF No. 7.  And purchasing a product that embodies the patent is not sufficient to create pre-suit knowledge of the patent, much less the type of egregious misconduct required for willful infringement.  *Procter & Gamble Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832, 855–56 (W.D. Wis. 2009).[5]   Thus, there is no basis to conclude that Cisco had knowledge of the '430 Patent (which had not issued at the time of the BladeFrame purchase) or Cisco's alleged infringement through its purchase of a BladeFrame system.

### 3. Cisco's Hiring Of Former Egenera Employees Do Not Show Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement.

Egenera alleges that Cisco had knowledge of the '430 Patent prior to this action by virtue of Cisco's hiring of former Egenera employees.  Ex. 34 (Egenera's Suppl. Resp. to Cisco Interog. No. 10) at 33.  Specifically, Egenera asserts that some of its employees that Cisco eventually hired knew of the existence of the '430 Patent.  But there is no evidence to back that assertion.

First, Egenera contends that a companywide email in 2007 informed all then-Egenera

---

[5] There also is no evidence that Cisco reverse-engineered, tampered with, misused, or otherwise copied any aspect of the BladeFrame that Cisco acquired, and it is undisputed that Cisco did not copy Egenera's source code.  Ex. 34 (Egenera's Suppl. Resp. to Cisco Interog. No. 10) at 32-33; Ex. 11 (Dr. Jones Dep. Tr.) at 78:14-17.

employees, including some that later went to work for Cisco, that the '430 Patent issued.  SUMF No. 2.  As an initial matter, a company-wide email announcing the issuance of a patent and congratulating the inventors and patent attorney does not establish knowledge of the patent claims for purposes of willful infringement or inducement.  *See Olaf Soot*, 2018 WL 3462510, at *5–6 ("At most, the emails are fairly read as providing [defendant] with notice of the '485's patent's *existence*.") (emphasis in original).  There is no evidence that any of Egenera's former employees ***actually read*** the email or the patent (which was not attached to the email), nor was there any invitation in the email to actually do so.  SUMF No. 2; SUMF No. 4.  Furthermore, no former Egenera employee hired by Cisco ever told Cisco about the existence of '430 Patent.  SUMF No. 18; *see Radware Ltd. v. A10 Networks, Inc.*, No. 13-cv-2021-RMW, 2013 WL 5373305, at *3-4 (N.D. Cal. Sept. 24, 2013) (finding insufficient proof of knowledge of the patent for inducement where no proof existed that the newly hired employee "informed A10 about the [patents]").

Likewise, Egenera has not alleged any facts to prove that Cisco's hiring of former Egenera employees resulted in any egregious misconduct.  For example, it is undisputed that many of the former Egenera employees arrived at Cisco ***after*** the accused products had been designed and developed and the alleged infringement began.  SUMF No. 16.  ***None*** of the employees identified by Egenera are inventors of the '430 Patent.  SUMF No. 17.  Therefore, no facts exist that could support finding that Cisco's hiring of former Egenera employees indicates any egregious misconduct as required for a finding of willful infringement.

> **4.     Egenera's Allegations That Cisco's Prosecution Counsel Or The Patent Office Cited The '430 Patent In The Prosecution Of Four Cisco Patents Do Not Show Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement.**

Egenera alleges that Cisco had knowledge of the '430 Patent prior to this action "because the Examiner in the U.S. Patent and Trademark office cited the '430 during the prosecution of

Cisco's own patents and patent applications." (Egenera's Suppl. Resp. to Cisco Interog. No. 5) at 21. But mere citation—whether by the Patent Office or Cisco's prosecution counsel—to the '430 Patent in prosecution of four of Cisco's 14,000 patents fails as a matter of law to establish pre-suit knowledge of the '430 Patent. *See, e.g.¸ F5 Networks*, 2016 WL 4427490 at *3-5 (finding no willfulness or pre-suit knowledge of patent where prosecution history included the asserted patent among dozens of other references, even where it was forwarded to in-house counsel of defendant); *Olaf Soot*, 2018 WL 3462510, at *5-6 (knowledge of outside prosecution counsel should not be imputed to a corporation absent evidence of outside counsel passing along its own knowledge to corporation) (collecting cases). As in *F5 Networks*, the relevant instances of citation to the '430 Patent during prosecution "did not ***discuss*** or ***attach*** the [patent]" and "[plaintiff] offered no evidence that any individual at [defendant ***reviewed*** the [patent] or was otherwise ***actually aware*** of it." 2016 WL 4427490 at *4. Indeed, Egenera never even deposed Cisco's prosecution counsel.

### 5. Egenera's Allegations That It Posted Online Articles About The Issuance Of The '430 Patent Do Not To Show That Cisco Had Pre-Suit Knowledge Of The '430 Patent Or Any Alleged Infringement.

Dr. Jones alleges that Egenera issued press releases about the issuance of the '430 Patent. Ex. 4 (Jones Opening Report) ¶203; SUMF No. 5. However, Dr. Jones does not identify any evidence that Cisco actually visited that website or viewed those alleged press releases. SUMF No. 6. That is fatal to Egenera's attempt to establish that Cisco had knowledge of the 430 Patent through such posted articles. *See F5 Networks*, 2016 WL 4427490 at *4-*5 (finding plaintiff's press release insufficient to establish defendant's knowledge of the patent where there was no proof that any employee of defendant ever reviewed the press release) (granting JMOL of no willfulness).[6]

---

[6] Nor can Egenera claim that any of the aforementioned five theories upon which it purports show knowledge of the '430 Patent or alleged infringement thereof are sufficient to demonstrate willful

**C.     The Court Should Grant Summary Judgment Of No Post-Suit Indirect Infringement And No Post-Suit Willful Infringement Because The Undisputed Evidence In This Case Is That Since Learning Of The '430 Patent Through Egenera's Complaint, Cisco Had a Good Faith Belief That It Did Not Infringe The '430 Patent.**

Cisco first learned of the '430 Patent when Egenera filed suit against Cisco.  Since learning of the '430 Patent, however, all of the evidence suggests that Cisco did not believe that its UCS products infringed.  *See, e.g.*, *Commil*, 135 S. Ct. at 1927–28 (holding that a claim for indirect infringement cannot be sustained in light of a reasonable belief in noninfringement on the part of the defendant).  The unrebutted testimony of Cisco employees establishes that Cisco has had a good-faith belief that it did not infringe the '430 patent.  *See, e.g.* Ex. 27 (Dvorkin Dep. Tr.) at 113:22-114:1 (unequivocal testimony by the principal developer of Cisco's UCS Manager that UCS does not practice the claims of the '430 Patent); *id.* at 115:15-116:5; Ex. 18 (Jayakrishnan Dep. Tr.) at 234:5-13; 234:21-235:7; Ex. 28 (Sethi Dep. Tr.) at 296:4-300:20; Ex. 24 (Clark Dep. Tr.) at 302:20-303:7.  That evidence is unrebutted.

For those reasons, the Court should grant summary judgment of no post-suit willful infringement and no post-suit indirect infringement.

**V.     CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment of no pre-suit damages, no indirect infringement (pre-suit and post-suit), and no willful infringement (pre-suit and post-suit).

---

blindness of the same.  For example, Egenera cannot demonstrate that any conduct on the part of Cisco rises to the level of "intentional ignorance that surpasses recklessness and negligence." *See, e.g.*, *Blazer*, 2017 WL 1047572, at *6-*7; *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, No. 13-cv-02502-JD, 2015 WL 2063988, at *4 (N.D. Cal. May 4, 2015), *aff'd*, 646 Fed. App'x 946 (Fed. Cir. 2016); *Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915-RGA, 2018 WL 620968, at *7 (D. Del. Jan. 30, 2018).

Dated:  August 8, 2018                By:    */s/ Michael R. Rhodes*
                                  John M. Desmarais (*admitted pro hac vice*)
                                  jdesmarais@desmaraisllp.com
                                  Paul A. Bondor (*admitted pro hac vice*)
                                  pbondor@desmaraisllp.com
                                  Jonas R. McDavit (*admitted pro hac vice*)
                                  jmcdavit@desmaraisllp.com
                                  Tamir Packin (*admitted pro hac vice*)
                                  tpackin@desmaraisllp.com
                                  Peter C. Magic (*admitted pro hac vice*)
                                  pmagic@desmaraisllp.com
                                  Brian Leary (*admitted pro hac vice*)
                                  bleary@desmaraisllp.com
                                  Lindsey Miller (*admitted pro hac vice*)
                                  lmiller@desmaraisllp.com
                                  Robert C. Harrits (*admitted pro hac vice*)
                                  rharrits@desmaraisllp.com
                                  Michael R. Rhodes (*admitted pro hac vice*)
                                  mrhodes@desmaraisllp.com
                                  Elizabeth Weyl (*admitted pro hac vice*)
                                  eweyl@desmaraisllp.com
                                  Carson Olsheski (*admitted pro hac vice*)
                                  colsheski@desmaraisllp.com
                                  DESMARAIS LLP
                                  230 Park Avenue
                                  New York, NY 10169
                                  Telephone: (212) 351-3400
                                  Facsimile: (212) 351-3401

                                  Kevin G. Kenneally (BBO # 550050)
                                  Kevin.Kenneally@leclairryan.com
                                  John W. Moran (BBO # 664914)
                                  John.Moran@leclairryan.com
                                  LECLAIRRYAN
                                  One International Place, Suite 1110
                                  Boston, Massachusetts 02110
                                  Telephone: (617) 502-8220
                                  Facsimile: (617) 502-8270

                                  *Counsel for Defendant Cisco Systems, Inc.*