**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **EGENERA, INC.,** | |
| **Plaintiff,** | **Civil Action No. 1:16-cv-11613-RGS** |
| **v.** | |
| **CISCO SYSTEMS, INC.,** | **JURY TRIAL** |
| **Defendant.** | |

## EGENERA, INC.'S RESPONSE IN OPPOSITION TO CISCO SYSTEM INC.'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES, INDIRECT INFRINGEMENT, OR WILLFULNESS

## REDACTED FOR PUBLIC FILING

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    MARKING ........................................................................................................3

    A.    Factual Background ................................................................................3

    B.    Legal Standard ......................................................................................4

    C.    Egenera Complied with the Requirements of § 287(a) to Recover Pre-Suit Damages by Providing Cisco with Constructive Notice..........................................4

        1.    Egenera marked the PAN Manager software...............................4

        2.    Egenera virtually marked PAN Manager with the '430 Patent. .................6

        3.    Egenera's marking was substantially consistent and continuous from October 2013 to August 2016. ........................7

III.    INDIRECT AND WILLFUL INFRINGEMENT ...............................................8

    A.    Factual Background ................................................................................8

    B.    Legal Standard ......................................................................................9

    C.    Cisco's Pre-Suit Knowledge of Egenera Precludes Summary Judgment of No Pre-Suit Indirect and Willful Infringement......................................11

        1.    Cisco and Egenera had meetings and exchanged correspondence over several years regarding Egenera and its technology. .........................12

        2.    Cisco hired approximately three dozen Egenera employees who provided Cisco with information about Egenera and worked on the competitor product UCS despite their non-compete agreements. .............13

        3.    Cisco employees followed Egenera's activities.........................15

        4.    Cisco purchased an Egenera BladeFrame system and used it in a manner inconsistent with normal use.........................................16

        5.    Cisco and the U.S. Patent and Trademark Office cited the '430 Patent during prosecution of four Cisco patents. .......................................16

    D.    Cisco Did Not Have a Good Faith Belief that it Did Not Infringe the '430 Patent nor that the '430 Patent was Invalid, Precluding Summary Judgment of No Post-Suit Damages for Indirect and Willful Infringement. .........17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Abstrax, Inc. v. Dell, Inc.*,
    No. 2:07-cv-221, slip op. (E.D. Tex. Sep. 11, 2009) (Ex. 123) ...........................................10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...........................................................................................................11

*Andover Healthcare, Inc. v. 3M Co.*,
    No. 13–843–LPS, 2016 WL 6246360 (D. Del. Oct. 18, 2016) .....................................1, 9, 10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    258 F. Supp. 3d 1013 (N.D. Cal. 2017) ..........................................................................10, 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................................4

*Commit USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015) .......................................................................................................11

*Conroy v. Reebok Int'l, Ltd.*,
    14 F.3d 1570 (Fed. Cir. 1994) ...........................................................................................18

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
    240 F. Supp. 3d 605 (E.D. Tex. 2017) (Bryson, J., sitting by designation).........................1, 9

*Gart v. Logitech, Inc.*,
    254 F.3d 1334 (Fed. Cir. 2001)......................................................................................1, 4, 7

*Genband v. Metaswitch*,
    No. 2:14-cv-33, 2016 U.S. Dist. LEXIS 37946 (E.D. Tex. Jan. 6, 2016) ........................18, 19

*Global–Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ...........................................................................................................11

*Halo Elecs.. Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ....................................................................................................9, 10

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (en banc).............................................................................9

*Kellogg Brown & Root Servs. v. U.S.*,
    728 F.3d 1348 (Fed. Cir. 2013).........................................................................................17

*Kolcraft Enters. v. Chicco USA, Inc.*,
   No. 09 C 03339, 2018 U.S. Dist. LEXIS 112943 (N.D. Ill. July 6, 2018) ............................19

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................11

*McKesson Automation, Inc. v. Swisslog Italia S.P.A.*,
   712 F. Supp. 2d 283 (D. Del. 2010) ..................................................................................5, 6

*Metrologic Instruments, Inc. v. PSC, Inc.*,
   No. 99-cv-4876, 2004 U.S. Dist. LEXIS 24949 (D. N.J. Dec. 13, 2004) ............................5, 6

*Mformation Tech., Inc. v. Research in Motion Ltd.*,
   No. C 08-04990 JW, 2010 WL 11484745 (N.D. Cal. Nov. 18, 2010) ............................10, 16

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998) .............................................................................................7

*Oreck Holdings, L.L.C. v. Minuteman Int'l, Inc.*,
   No. 03-319, 2003 U.S. Dist. LEXIS 20114 (E.D. La. Nov. 7, 2003) .......................................7

*Radware, Ltd. v. f5 Networks, Inc.*,
   147 F. Supp. 3d 974 (N.D. Cal. 2015) .................................................................................10

*Sentry Prot. Prods. v. Eagle Mfg. Co.*,
   400 F.3d 910 (Fed. Cir. 2005) ................................................................................................7

*SRI Int'l v. Matsushita Elec. Corp.*,
   775 F.2d 1107 (Fed. Cir. 1985) (en banc) ..............................................................................4

*Suprema, Inc. v. ITC*,
   626 Fed. Appx. 273 (Fed. Cir. 2015) ......................................................................................1

*Unwired Planet, LLC v. Apple Inc.*,
   829 F.3d 1353 (Fed. Cir. 2016) ............................................................................................11

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ..........................................................................................1, 9

*WCM Indus., Inc. v. IPS Corp.*,
   721 Fed. Appx. 959 (Fed. Cir. 2018) ......................................................................................9

*Wyeth v. Apotex*, *Inc.*,
   No. 08-22308, 2009 U.S. Dist. LEXIS 129058 (S.D. Fla Aug 13, 2009) ...............................1

STATUTES

35 U.S.C. § 271 ........................................................................................................10, 11

35 U.S.C. § 284 ............................................................................................................... 9

35 U.S.C. § 287(a) ................................................................................................. 1, 4, 5, 6

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | June 11, 2007 Email from P. Manca with Subject: "Egenera wins another patent – and this is the BIG one!" (EGENERA01567366) |
| 2 | Excerpt of March 12, 2018 Deposition of George Chen |
| 3 | Excerpt of March 8, 2018 Deposition of Scott Clark |
| 4 | Excerpt of March 1, 2018 Deposition of Richard Hinson |
| 5 | Excerpt of March 14, 2018 Deposition of Jason Shaw |
| 6 | Excerpt of PAN Manager Configuration and Installation Guide) (EGENERA00339795) |
| 7 | Declaration of Scott Geng |
| 8 | August 29, 2018 Egenera's Supplemental and Amended Responses to Cisco's First Set of Interrogatories |
| 9 | Excerpt of March 13, 2018 Deposition of Kevin Kerrigan |
| 10 | August 1, 2016 Email from S. Surprenant with Subject: "RE: Egenera Patent Info?" (EGENERA02280905) |
| 11 | Email from K. Kerrigan with Subject: "RE: Patents Page on Website" (EGENERA02280906) |
| 12 | Excerpt of April 3, 2018 Egenera's Supplemental Responses to Cisco's First Set of Interrogatories |
| 13 | August 8, 2018 Kevin Kerrigan Declaration |
| 14 | Excerpt of October 16, 2017 Deposition of Peter Manca |
| 15 | Excerpt of April 12, 2018 Egenera's Supplemental Responses to Cisco's First Set of Interrogatories |
| 16 | Excerpt of March 29, 2018 Vern Brownell Deposition |
| 17 | November 24, 2008 Email from D. Epstein with Subject: "Re: Meeting with Thompson of Egenera – Any interest in meeting him? jpm" (EGENERA02225382) |
| 18 | May 13, 2009 Email from M. Thompson with Subject: "FW: Cisco email (EGENERA02280908) |
| 19 | Excerpt of March 15, 2018 Michael Thompson Deposition |
| 20 | Excerpt of March 16, 2018 Brian Christensen Deposition |
| 21 | Excerpt of February 27, 2018 Bhaskar Jayakrishnan Deposition |
| 22 | U.S. Patent No. 7,526,527 (EGENERA02299421) |
| 23 | U.S. Patent No. 7,664,823 (EGENERA02299416) |
| 24 | U.S. Patent No. 7,808,924 (EGENERA02299577) |
| 25 | Excerpt of U.S. Patent No. 7,437,477/U.S. Patent Application 11/622,436 File History (EGENERA02299513) |

| Exhibit | Description |
|---|---|
| 26 | U.S. Patent No. 7,437,477<br>(EGENERA02299576) |
| 27 | Excerpt of Egenera PAN Manager Web Service API Primer<br>(EGENERA00459143) |
| 28 | Excerpt of Egenera PAN Manager Command Reference<br>(EGENERA01813084) |
| 29 | Excerpt of Egenera PAN Manager Administrator's Guide<br>(EGENERA01813050) |
| 30 | ██████████████████████████████████████<br>(CISCO00045519) |
| 31 | Excerpt of March 16, 2018 Scott Geng Deposition |
| 32 | January 16, 2004 Email from C. Pease with Subject "Cisco Plan" and<br>January 19, 2004 Email from M. Ganem with Subject "RE: Cisco Plan"<br>(EGENERA01528221) |
| 33 | Excerpt of April 20, 2018 Expert Report of Dr. Mark Jones |
| 34 | March 24, 2004 Email from R. Wu with Subject "Egenera/Cisco Agenda"<br>(EGENERA01530681) |
| 35 | Cisco Systems, Inc. Mutual Non-Disclosure Agreement<br>(EGENERA01749786) |
| 36 | March 24, 2004 Email from C. Pease with Subject "Cisco visit to Egenera April 15 10am-2pm"<br>(EGENERA01530677) |
| 37 | April 15, 2004 Egenera, Inc., Executive Briefing Cisco Presentation<br>(EGENERA02226069) |
| 38 | May 3, 2004 Email from J. Harris with Subject "Re: ??5/11 to San Fran??"<br>(EGENERA01532984) |
| 39 | ████████████████████████████████████<br>(CISCO00093039) |
| 40 | May 19, 2009 article Titled: "The stealthy 'spin-in' behind Cisco's data centre play" |
| 41 | Excerpt of March 8, 2018 Bryan Semple Deposition |
| 42 | ████████████████████████████████<br>██████████████<br>(CISCO00034652) |
| 43 | June 5, 2008 Email from S. Clark with Subject "RE: egenera"<br>(CISCO00039195) |
| 44 | ███████████████████████████<br>(CISCO00083452) |
| 45 | ██████████████████████<br>(CISCO00093041) |
| 46 | ████████████████████████████████<br>(CISCO00167870) |
| 47 | ███████████████████████████<br>(CISCO00007336) |

| Exhibit | Description |
|---------|-------------|
| 48 | ███████████████████████████████ <br> (CISCO00018029) |
| 49 | ████████████████████████ <br> (CISCO00093033) |
| 50 | ████████████████████████████████ <br> ██ <br> (CISCO00093068) |
| 51 | ██████████████████████████ <br> (CISCO00093048) |
| 52 | ███████████████████████████ <br> ███████ <br> (CISCO00083467) |
| 53 | █████████████████████████████ <br> ███ <br> (CISCO00084727) |
| 54 | █████████████ <br> (CISCO00240716) |
| 55 | April 9, 2008 article Titled: "Nuova Systems Acquisition Marks Another Major Step in Cisco's Data Center Efforts" |
| 56 | December 3, 2008 Email from P. Manca with Subject: "RE: Cisco" (EGENERA02226068) |
| 57 | May 10, 2004 Egenera Products and Roadmap (Cisco) PowerPoint (EGENERA02226070) |
| 58 | June 2004 Egenera Cisco Drill Down PowerPoint (EGENERA02226071) |
| 59 | July 2008 Egenera Cisco OEM Proposal – PAN Manager by Egenera Overview (EGENERA02226072) |
| 60 | Egenera Cisco Summary (EGENERA02226073) |
| 61 | December 4, 2008 Email from Mike Thompson with Subject: "Re: how did you make out at Cisco?" (EGENERA01597695) |
| 62 | December 5, 2008 Email from Mike Thompson with Subject: "Ned Hooper, SVP Cisco Corp Business Development" (EGENERA01597762) |
| 63 | March 16, 2009 article Titled: "Cisco Unleashes the Power of Virtualization with Industry's First Unified Computing System" |
| 64 | March 11, 2004 Letter from D. Hoffman of Cisco with Subject: "Execution of General Purchase Agreement (2 copies)" (EGENERA00570512) |
| 65 | May 20, 2004 Email from A. Lanzetta with Subject: "RE: Cisco BladeFrame status, Ticket # 1567335" (EGENERA01533772) |

| Exhibit | Description |
|---------|-------------|
| 66 | May 20, 2004 Email from P. Manca with Subject: "RE: Cisco BladeFrame status, Ticket # 1567335" (EGENERA01533774) |
| 67 | April 13, 2014 Email from B. Mannal with Subject: "Notification: PAN Manager Release 7.6.1" (CISCO00115710) |
| 68 | March 4, 2013 Email from B. Mannal with Subject: "Re: Egenera" (CISCO00194869) |
| 69 | December 19, 2008 Email from H. Sussman with Subject: "Re: Competitive support for Cal" (CISCO00168739) |
| 70 | J. Shaw Invention, Confidentiality and Noncompete Agreement (EGENERA00570750) |
| 71 | S. Sethi November 1, 2001 Invention, Confidentiality and Noncompete Agreement (EGENERA00570832) |
| 72 | S. Clark Invention, Confidentiality and Noncompete Agreement (EGENERA00571603) |
| 73 | S. Sethi March 13, 2006 Invention, Confidentiality and Noncompete Agreement (EGENERA00570846) |
| 74 | July 16, 2008 Email from Scott Clark with Subject: "RE: Ds-Resume-2[1].rtf (CISCO00040989) |
| 75 | ███████████████████████████████████████ (CISCO00041563) |
| 76 | August 5, 2008 Email from Julie Orient – X with Subject: "Re: Jason Kohles – RHCE" (CISCO00041664) |
| 77 | ███████████████████████████████████████ (CISCO00186795) |
| 78 | December 19, 2007 Email from E. Bugnion with Subject: "Notes – SAVVIS meeting" (CISCO00033804) |
| 79 | Excerpt of March 9, 2018 Deposition of Bradley Mannal |
| 80 | October 23, 2009 Email from E. Koontz with Subject: "RE: Egenera competitive – FW: CMS UCS" (CISCO00182156) |
| 81 | August 20, 2008 Email from S. Clark with Subject: "RE: Egenera" (CISCO00041999) |
| 82 | February 15, 2008 Email from R. Judge with Subject: ("RE: b[.] lincoln") and ("Has worked in Egenera supporting similar environment") (CISCO00034592) |
| 83 | ███████████████████████████████ (CISCO00033704) |
| 84 | ███████████████████████████████████████ (CISCO00182193) |

| Exhibit | Description |
|---------|-------------|
| 85 | <br>(CISCO00182493) |
| 86 | <br>(CISCO00183090) |
| 87 | <br>(CISCO00038302) |
| 88 | <br>(CISCO00034709) |
| 89 | April 6, 2008 Email from S. Clark with Subject: "Dell PAN Manager Sales - confidential" (CISCO00036650) |
| 90 | Egenera Dell PAN System Beats Cisco UCS (CISCO00045741) |
| 91 | <br>(CISCO00182727) |
| 92 | <br>(CISCO00191299) |
| 93 | <br>(CISCO00036961) |
| 94 | <br>(CISCO00036961) |
| 95 | <br>(CISCO00045006) |
| 96 | November 2, 2009 Email from G. Page with Subject: "RE: EBC on the 5Th. of November San jose CA" (CISCO00182491) |
| 97 | Dec. 18, 2009 Email from S. Morin with Subject: "Fwd: Google Alert – Egenera" (CISCO00184147) |
| 98 | <br>(CISCO00041411) |
| 99 | <br>(CISCO00045602) |
| 100 | <br>(CISCO00182396) |
| 101 | <br>(CISCO00188263) |



| Exhibit | Description |
|---------|-------------|
| 102 | November 4, 2009 Email from A. Kvasyuk with Subject: "RE: EBC on the 5Th. Of November San jose CA" (CISCO00182561) |
| 103 | Excerpt of February 26, 2018 Egenera's Responses to Cisco's First Set of Requests for Admission |
| 104 | February 23, 2018 Lindamood Deposition |
| 105 | Egenera Pre-Installation Site Survey (CISCO00093421) |
| 106 | Egenera CMS X86 Virtual Computing Environment (CISCO00182094) |
| 107 | Excerpt of Egenera Transitional Manage Services (CISCO00224967) |
| 108 | Egenera Professional Services Oracle RAC on Egenera Measurable value and differentiation (CISCO00226819) |
| 109 | Egenera Utility Hosting Accelerator (CISCO00224966) |
| 110 | B. Mannal Jan. 24, 2005 Invention, Confidentiality and Noncompete Agreement (EGENERA00571215) |
| 111 | Cisco October 10, 2017 First Supplemental Initial Disclosure Statement |
| 112 | November 13, 2017 Decision Denying Institution of *Inter Partes* Review |
| 113 | Excerpt of March 26, 2018 Satinder Sethi Deposition |
| 114 | May 4, 2009 Email from J. Collins with Subject: "Egenera FUD re UCS..." (CISCO00172178) |
| 115 | ███████████████████████ (CISCO00191230) |
| 116 | Aug. 22, 2008 Email from Google Alerts with Subject: "Google Alert – egenera" (CISCO00168136) |
| 117 | Excerpt of March 1, 2018 Mike Dvorkin Deposition |
| 118 | February 1, 2018 Tony Vaidya Deposition |
| 119 | July 31, 2007 Press Release "Egenera Granted Patent for Processing Area Network" (EGENERA02280815) |
| 120 | April 7, 2017 Egenera's Preliminary Infringement Contentions Transmittal |
| 121 | December 29, 2017 Egenera's Amended Infringement Contentions Transmittal |
| 122 | February 14, 2018 Egenera's Final Infringement Contentions Transmittal |
| 123 | *Abstrax, Inc. v. Dell, Inc.*, No. 2:07-cv-221, slip op. (E.D. Tex. Sep. 11, 2009) |

## I.     INTRODUCTION

Rather than face the facts, Cisco glosses over the evidence and lumps disparate issues into a single motion. Each of the five issues Cisco presents in its single motion (marking, pre-suit indirect infringement, pre-suit willful infringement, post-suit indirect infringement, and post-suit willful infringement) are classic fact questions for a jury to consider and interpret the evidence:

- Compliance with "the marking statute, 35 U.S.C. § 287(a), is a question of fact."[1]

- "Determining "willfulness is a highly fact-based endeavor" and "a 'classical jury question of intent.'"[2]

- Whether defendant "was willfully blind to . . . infringement is a question of fact," as is whether defendant "possessed the necessary culpable state of mind."[3]

Marking: Egenera virtually marked its PAN Manager software during the entire constructive notice period. Egenera's customers received the PAN Manager software by downloading an ISO image, and Egenera marked four different guide documents—which are routinely consulted during installation and use of PAN Manager—that customers received as part of the software. The virtual marking language repeatedly pointed customers to a website that listed the '430 Patent as one of the patents covering the BladeFrame system. That website was substantially consistent and continuously available, and thus Egenera provided constructive notice of the '430 Patent.

---

[1] *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

[2] *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 618 (E.D. Tex. 2017) (Bryson, J., sitting by designation); *Andover Healthcare, Inc. v. 3M Co.*, No. 13–843–LPS, 2016 WL 6246360, at *10 (D. Del. Oct. 18, 2016) (quoting *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016)).

[3] *Suprema, Inc. v. ITC*, 626 Fed. Appx. 273, 280 (Fed. Cir. 2015); *Wyeth v. Apotex, Inc.*, No. 08-22308, 2009 U.S. Dist. LEXIS 129058, *43, (S.D. Fla Aug 13, 2009).

<u>Indirect and Willful Infringement (Pre-suit)</u>: Cisco and Egenera are not strangers. Cisco and Egenera have a long history, and from that history (including Cisco's investigation of Egenera and its patented product), Cisco gained the requisite knowledge and intent for indirect and willful infringement. Not only did Cisco executives travel to Egenera's headquarters to discuss Egenera's BladeFrame technology, but they also purchased a BladeFrame system for their own analysis. Cisco secretly created Nuova Systems to compete with Egenera. Nuova was founded by former Cisco employees ████████████████████████, and Nuova then hired former Egenera employees who concealed the existence of the company from Egenera. In the end, Cisco hired over three dozen former Egenera employees that competed with Egenera despite their non-compete agreements, ████████████████████████████████, and provided Cisco with Egenera information. Many of these employees learned of the issuance of the '430 Patent while they worked at Egenera. Some former Egenera employees also tracked Egenera's online activities; one of Egenera's online activities was issuing a press release regarding the '430 Patent. Cisco itself also cited the '430 Patent in the prosecution of its patents.

<u>Indirect and Willful Infringement (Post-suit)</u>: From filing an *inter partes* review petition that the Patent Trial and Appeal Board declined to even institute (under a lower burden of proof with no presumption of validity and a broader standard for claim construction) to failing to conduct a proper non-infringement analysis comparing the asserted claims of the '430 Patent to Cisco's UCS, Cisco's positions in this case lack good faith.

## II.   MARKING

### A.   Factual Background[4]

During the constructive notice period of October 1, 2013 to August 5, 2016, Egenera did not sell any BladeFrames in the United States, only PAN Manager software. SOF#24. The PAN Manager software included the PAN Manager Configuration and Installation Guide, PAN Manager Web Service API Primer, PAN Manager Command Reference, and PAN Manager Administrator's Guide (collectively, "Guides") for all versions of PAN Manager, including versions sold by Egenera's partners, released after September 2012 (*i.e.*, PAN Manager 7 and subsequent releases). SOF#22. The Guides state:

> This product is protected by U.S. and international copyright and intellectual property laws. Egenera products are covered by one or more patents listed at http://www.egenera.com/patents.

SOF#22. PAN Manager version 7 and subsequent releases are provided to customers by downloading an ISO image (basically a CD or DVD without the plastic disc) that includes the installation files and Guides. SOF#23. Egenera provided only four PAN Manager version 6 software licenses but over 300 PAN Manager version 7 licenses and later software licenses from October 1, 2013 to August 5, 2016. SOF#24.

The webpage http://www.egenera.com/patents became available in August 2012 and lists patents, including the '430 Patent, "covering" Egenera's BladeFrame system and third party hardware with PAN Manager. SOF#25. The patents webpage may have inadvertently become unavailable when Egenera refreshed its website on May 27, 2016. SOF#26. Egenera discovered

---

[4] Egenera's Local Rule 56.1 statement includes its Responses to Cisco's Statement of Allegedly Undisputed Material Facts and Egenera's Counter Statement of Undisputed Material Facts. Egenera includes a summary of its facts here and at Section III.A. using citations of the format "SOF#[Fact Number(s)]."

the patents webpage was unavailable on July 29, 2016, and restored it on August 8, 2016. SOF#27-28.

### B.    Legal Standard

Compliance "with the marking statute, 35 U.S.C. § 287(a), is a question of fact." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). Section 287(a) allows patentees to recover pre-suit damages when they "give notice to the public" by:

> fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.

Summary judgment is warranted if the pleadings and discovery show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "[T]he district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor and must resolve all doubt over factual issues in favor of the party opposing summary judgment." *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc) (internal citations omitted).

### C.    Egenera Complied with the Requirements of § 287(a) to Recover Pre-Suit Damages by Providing Cisco with Constructive Notice

Egenera provided constructive notice of the '430 Patent by marking the product it distributed during the constructive notice period—the PAN Manager software.

#### 1.    Egenera marked the PAN Manager software.

Substantial evidence of marking precludes summary judgment and would support a jury's finding that Egenera provided constructive notice since October 1, 2013. Since that time, Egenera has only provided PAN Manager software for use with third party hardware and has not

sold any Egenera BladeFrames in the United States. SOF#24; Ex. 13 (Kerrigan Dec.) at ¶5. As Egenera has not sold any BladeFrames (physical products) in the United States during the constructive notice period from October 1, 2013 to August 5, 2016, there was no hardware for Egenera to mark. In the case of third parties selling hardware, such as Dell, it would have been improper to mark their servers with the '430 Patent because those servers could be sold without Egenera's PAN Manager software—a situation in which even Cisco does not argue the patent would be practiced.

The PAN Manager version 7 software and subsequent releases were provided to customers by making available an ISO image of a CD or DVD for download. SOF#23; Ex. 7 (Geng Dec.) at ¶¶17-23. Thus, the product that enabled the creation of the patent practicing computer platform was the software provided by the ISO image. Ex. 30 (UCS Rack Server Competitive Landscape Analysis Presentation) at 2 ("All the key value add is in the systems management software."). And Egenera marked the product (*i.e.*, the ISO image) by including the Guides as four of the files in the ISO image download. PAN Manager software is used by sophisticated corporate clients with IT departments who would typically consult the Guides. Ex. 7 (Geng Dec.) at ¶¶17-23.

Egenera properly marked the PAN Manager software given "the character of the article." 35 U.S.C. § 287(a). Egenera's PAN Manager, like all software, cannot have notice directly "fixed thereon." The software was distributed by an ISO image downloaded over a network connection and the ISO image download always included the Guides. SOF#22-23. Egenera marked the Guides that that were part of the product. SOF#22. Cisco cites to *McKesson* and *Metrologic* to suggest that Egenera's marking of the Guides was insufficient (Dkt. 146 at 10-11), but both of those cases involved a physical product capable of being marked. In *McKesson*

*Automation, Inc. v. Swisslog Italia S.P.A.*, the Court required marking of the "Robot-Rx." 712 F. Supp. 2d 283, 296-97 (D. Del. 2010). And, in *Metrologic Instruments, Inc. v. PSC, Inc.*, the product at issue was also a physical device. No. 99-cv-4876, 2004 U.S. Dist. LEXIS 24949, at *5-*7 (D. N.J. Dec. 13, 2004). In those cases, the user manuals were separate from the product. But here, Egenera did not sell BladeFrames during the marking period; it only provided the ISO image containing the PAN Manager software. SOF#23-24. Further unlike *Metrologic* where a user guide was "literature that [wa]s shipped with the device," *id.* at *58, the Guides are part of the product that Egenera provided—an ISO image containing its PAN Manager software for installation that would create a patent practicing product. SOF#23.

### 2.    Egenera virtually marked PAN Manager with the '430 Patent.

Egenera virtually marked its PAN Manager software with the '430 Patent. Section 287(a) allows for virtually marking by including "an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent." Egenera marked the Guides included with the ISO image, stating:

> This product is protected by U.S. and international copyright and intellectual property laws. Egenera products <u>are covered</u> by one or more patents listed at http://www.egenera.com/patents.

SOF#22; Ex. 6 (PAN Manager Configuration and Installation Guide) at 2 (emphasis added). Egenera unequivocally stated that its products (PAN Manager software) are—not that they may be—covered by the patents at <u>http://www.egenera.com/patent</u>, which includes the '430 Patent. SOF#22. Thus, there is a direct association between the article that creates a patent practicing system (the ISO image that contains the PAN Manager software) with the patent number (the '430 Patent) as required by Section 287(a).

### 3. Egenera's marking was substantially consistent and continuous from October 2013 to August 2016.

Egenera's marking of its PAN Manager software during the notice period was substantially consistent and continuous, which provided constructive notice. The Federal Circuit has held that marking must be "substantially consistent and continuous" once it has begun. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). Since October 1, 2013, Egenera has marked all but four of the over 300 PAN Manager software licenses that it distributes as ISO images. SOF#24.

Egenera's patent webpage was available for the entirety of the approximately three-year notice period beginning on October 1, 2013, except for about two-and-a-half months. SOF#26, 28. The webpage first became available in 2012. The web address was listed in the PAN Manager version 7 Guides before the marking period began. SOF#22. The patent webpage most likely became unavailable when Egenera refreshed its entire website on May 27, 2016. SOF#26; Ex. 13 (Kerrigan Dec.) at ¶6. Egenera discovered the webpage was unavailable on July 29, 2016. SOF#27. The webpage was restored on August 8, 2016. SOF#28; Ex. 13 (Kerrigan Dec.) at ¶7. Thus, but for just over two months during the three-year marking period, Egenera's marking was substantially consistent and continuous during the notice period. *Cf. Oreck Holdings, L.L.C. v. Minuteman Int'l, Inc.*, No. 03-319, 2003 U.S. Dist. LEXIS 20114, at *9 (E.D. La. Nov. 7, 2003).

\* \* \*

Compliance with the marking statute is a question of fact. *Gart*, 254 F.3d at 1339. Egenera marked the ISO image containing the software that enables the creation of the patent practicing computer platform. At best, Cisco raises an issue of material fact as to whether the short period Egenera's webpage was inadvertently unavailable means that marking was not substantial and continuous. *See,* e.g., *Sentry Prot. Prods. v. Eagle Mfg. Co.*, 400 F.3d 910, 918

(Fed. Cir. 2005) ("Sentry came forth with an affidavit stating that its products were marked, together with documents showing sales in that period. . . . [T]his evidence . . . is not so 'conclusory' or 'lacking in factual support' as to allow us to affirm the grant of summary judgment. . . . Sentry is entitled to an opportunity to prove constructive notice and corresponding entitlement to damages for infringement. . . ." (citation omitted)). The Court should deny Cisco's motion for summary judgment on pre-suit damages.

## III.   INDIRECT AND WILLFUL INFRINGEMENT

### A.   Factual Background

This is not a case between strangers. Rather, Cisco has had knowledge of Egenera, its technology, its products, and its '430 Patent for more than a decade:

- Cisco initiated contact and sent high level executives to have meetings with Egenera, including at Egenera's headquarters in Marlboro, Massachusetts, to discuss Egenera and its patent practicing product; SOF#29-34, 40-42

- Cisco created a company, Nuova Systems, that former Egenera employees joined ███████████████, which developed a competitor to Egenera's BladeFrame system. SOF#35-39

- Cisco hired more than three dozen Egenera employees that competed with Egenera despite non-compete agreements, took Egenera confidential documents, ████████████████████, provided Cisco with information about Egenera, and had learned of the '430 Patent; SOF#43-55

- Cisco followed Egenera's activities online; SOF#56-59

- Cisco purchased Egenera's BladeFrame system and used it in a manner inconsistent with normal use; SOF#60-63

- Cisco knew of the '430 Patent when both Cisco and the USPTO cited the '430 Patent during the prosecution of Cisco's patents. SOF#64-65

And since this case began, Cisco has continued to take positions that lack merit, such as:

- Not conducting a proper non-infringement analysis by having its individuals most knowledgeable about the accused UCS product compare

it to the asserted claims of the '430 Patent in light of Egenera's infringement contentions; SOF#66-69

- Arguing obviousness (not anticipation) in its petition for *inter partes* review of the '430 Patent and then when the USPTO denied its request under a lower standard of invalidity and broader standard for claim construction, doing an about-face and now contending that the '430 Patent is anticipated by some of the same art. SOF#70

### B.    Legal Standard

"Determining willfulness is a highly fact-based endeavor." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 618 (E.D. Tex. 2017) (Bryson, J., sitting by designation). In *Halo Elecs.. Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), the Supreme Court lowered the requirements for proving willful infringement under 35 U.S.C. § 284 and held that willful infringement may be found where an infringer is subjectively reckless. *Id.* at 1932-34. The Court also held the patentee may meet its burden to prove willfulness by a preponderance of the evidence. *Id.*

"Willfulness is a 'classical jury question of intent,' and 'an infringer's subjective bad faith alone may support an award of enhanced damages.'" *Andover Healthcare, Inc. v. 3M Co.*, No. 13–843–LPS, 2016 WL 6246360, at *10 (D. Del. Oct. 18, 2016) (quoting *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016)). To determine whether infringement was willful, the totality of the circumstances are to be considered, including circumstantial evidence. *WCM Indus., Inc. v. IPS Corp.*, 721 Fed. Appx. 959, 970-71 (Fed. Cir. 2018).

"[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id.* at 1933 (citations omitted). "[A] person is reckless if he acts *knowing* or *having reason to know* of facts which would lead a reasonable man to realize his actions are unreasonably risky." *Id.* (internal quotations and citations omitted). In rejecting *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc), the Supreme Court noted that *Seagate* had

"the effect of insulating some of the worst patent infringers from any liability for enhanced damages." *Halo*, 136 S. Ct. at 1932.

Summary judgment of no willfulness has been denied where: (1) an accused infringer knew of a patent through its employees, technology discussions between the parties, and (2) the patentee was a "single-product company focused solely on its patented" product. *Mformation Tech., Inc. v. Research in Motion Ltd.*, No. C 08-04990 JW, 2010 WL 11484745, at *12-13 (N.D. Cal. Nov. 18, 2010) (pre-*Halo*); *see also Abstrax, Inc. v. Dell, Inc.*, No. 2:07-cv-221, slip op. 3-5 (E.D. Tex. Sep. 11, 2009) (denying summary judgment of no willful infringement where evidence suggested accused the infringer employee knew of technology and patent application) (pre-*Halo*) (attached as Ex. 123). Summary judgment of no willfulness is also improper when an accused infringer has been notified of a patent and its application during prosecution of the accused infringer's own patent application. *Radware, Ltd. v. f5 Networks, Inc.*, 147 F. Supp. 3d 974, 1011-13 (N.D. Cal. 2015) (pre-*Halo*). Summary judgment of no willfulness is also improper when there is some evidence of reverse engineering and possible evidence of knowledge of the patent-in-suit's application. *Andover*, 2016 WL 6246360, at *6. Summary judgment is also improper when the accused infringer puts forth alleged non-infringing alternatives but had not implemented them. *Cf. Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017) (denying JMOL on willfulness).

Section 271 of Title 35 of the United States Code defines induced and contributory infringement. For induced infringement, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). For contributory infringement, "[w]hoever offers to sell or sells within the United States or imports into the United States a component . . . for use in practicing a patented process, constituting a material part of the invention, knowing the

same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

Both induced and contributory infringement require knowledge or <u>willful blindness</u> of the patent-in-suit. *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *Commit USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016). "[T]he doctrine of willful blindness requires the patentee to show not only that the accused subjectively believed that there was a high risk of infringement, but also that the accused took deliberate actions to avoid confirming infringement." *Unwired*, 829 F.3d at 1364 (citing *Global-Tech*, 563 U.S. at 769-70).

### C.   Cisco's Pre-Suit Knowledge of Egenera Precludes Summary Judgment of No Pre-Suit Indirect and Willful Infringement

An overwhelming amount of evidence establishes (or provides ample reason for a jury to infer) Cisco's knowledge of Egenera, its technology, its BladeFrame system, and the '430 Patent. And if Cisco did not know of the '430 Patent, the jury would certainly be able to infer Cisco deliberately avoided knowledge of the patent. Cisco attempts to gloss over this evidence, but the totality of the evidence cannot be ignored. The summary judgment record as a whole must be viewed in the light most favorable to Egenera. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And "[c]redibility determination, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Each group of evidence alone—and especially when viewed together—raises genuine issues of material fact that preclude summary judgment of no pre-suit indirect and willful infringement.

1. **Cisco and Egenera had meetings and exchanged correspondence over several years regarding Egenera and its technology.**

Cisco and Egenera have met and interacted since 2004, and all of those interactions centered around Egenera's technology. SOF#29-30, 32-34, 40, 42. In 2004, Cisco approached Egenera and was interested in a potential business venture. SOF#29. The parties then held meetings, including with Egenera's founder, and traded correspondence about Egenera's technology, products, market, and customers. SOF#30. They also executed a mutual non-disclosure agreement in March 2004, which covered the disclosure of confidential information and acknowledged the existence of patents and patent applications. SOF#31. In April 2004, Cisco visited Egenera's headquarters in Marlboro, Massachusetts to learn more about Egenera and Egenera gave presentations of its BladeFrame with PAN Manager system, including disclosing confidential details under the non-disclosure agreement. SOF#32. The parties may have even discussed Egenera's patent applications at the meeting. SOF#33; Ex. 14 (Manca Oct. 16, 2017 Tr.) at 51:11-18 (testifying "I believe we did" when asked "During the meeting, did Egenera tell Cisco that it had filed a patent application . . . for this technology?"); Ex. 16 (Brownell Tr.) at 219:4-10 (noting that patent application discussion "could have been a discussion we just had" outside slide presentation). In addition to the Massachusetts meeting, the parties also met twice in California to discuss a business relationship that would take advantage of Egenera's technology. SOF#34.

After the parties' 2004 discussion, former Cisco employees—including ones involved in the 2004 Cisco/Egenera communications—started a company called Nuova Systems to develop what would become Cisco's Unified Computing System, the accused product. SOF#35. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF#36; Ex. 42 at 1 (▮▮▮▮▮▮▮▮▮▮▮▮▮



). Cisco eventually acquired Nuova in April 2008. SOF#39.

Then, in 2008, the parties again had meetings and traded phone calls and correspondence regarding a potential partnership. SOF#40. Rather than establish a joint business venture, Cisco publicly announced its UCS product that would compete with Egenera in March 2009. SOF#41. Egenera's CEO later contacted Cisco's CEO and informed him of "relevant IP and patents". SOF#42; Ex. 18. A reasonable jury could infer Cisco gained pre-suit knowledge of the '430 Patent (or possessed the requisite willful blindness) from these facts alone.

### 2. Cisco hired approximately three dozen Egenera employees who provided Cisco with information about Egenera and worked on the competitor product UCS despite their non-compete agreements.

Cisco hired about three dozen Egenera employees over the years—to the point that one of them said "[a]ll of [Egenera's] talent is at Cisco." SOF#43; Ex. 68; *see also* Ex. 69 (stating that a "considerable number of key former Egenera employees" were now at Cisco and seeking details on Egenera from a former Egenera employee). Several former Egenera employees signed non-disclosure and non-compete agreements, but still moved to Cisco to market the competing UCS system.  SOF#44. 

SOF#36. In fact, Cisco hired so many former Egenera employees that one executive told others at Cisco to no longer "actively recruit" from Egenera; otherwise Cisco could garner "attention we don't want to attrack."  SOF#43, 45;  Ex. 74 at 1; Ex. 75 at 1.



SOF#46; Ex. 77 at 2 (

).

Former Egenera employees also provided insight on Egenera and its operations to other Cisco employees, but "confidentially and offrecord." SOF#47; Ex. 81; Ex. 80 at 1 ("J[.] Shaw has some really good insight in to Egenera (he used to work there). . .and he is willing to work with us regarding the pro's and con's of an eGenera solution."). For example, a former Egenera employee provided Cisco "details on Dell Egenera relationship" and explicitly asked that the email be "delete[d] after review." SOF#48; Ex. 89. Some former Egenera employees also took Egenera documents, including some labeled confidential, with them to Cisco. SOF#49.



SOF#38, 50-51.

SOF#50-51.

SOF#50; Ex. 92 (

).

Ex. 94 (

).

. SOF#51; Ex. 95; Ex. 96; Ex.

14

102. ████████████████████████████████████████████████████

████████████████████████████████████████ SOF#38.

The '430 Patent was well-known at Egenera, including to many of the employees later hired by Cisco. SOF#52-53. And before many of the Egenera employees left for Cisco, Peter Manca sent an e-mail to all Egenera employees announcing the issuance of the '430 Patent discussing how it was "a huge milestone in our history" and "represents a significant part of our IP." SOF#53; Ex. 1 (Email from P. Manca with Subject: "Egenera wins another patent – and this is the BIG one!"). A reasonable jury could infer that pre-suit knowledge of the '430 Patent—as well as Egenera, its technology, and its products—was acquired by Cisco. A reasonable jury could also infer that Cisco gained pre-suit knowledge of the '430 Patent (or possessed the requisite willful blindness) from these facts alone.

### 3.      Cisco employees followed Egenera's activities.

Cisco employees kept tabs on Egenera and followed the company's activities. For example, Cisco employees read Egenera's blog and anonymously commented on a post. SOF#54; Ex. 114 at 1 ("Dude... have you been following any of the Egenera BLOGs (and replied) re UCS? . . . This reply so hit the nail right on the head . . . LOL does he know I wrote it?"). In addition, a Cisco employee set up a Google Alert for Egenera and received emails about the company. SOF#55; Ex. 5 (Shaw Tr.) at 85:10-89:4. On July 31, 2007, Egenera issued a press release online announcing the issuance of its '430 Patent. SOF#56. Some of the former Egenera employees who were hired by Cisco were at Egenera at the time the '430 Patent issued. SOF#57; Ex. 33 (Jones Report) ¶206. Egenera is a company whose entire focus was on its BladeFrame and PAN Manager products in the 2000s. A reasonable jury could infer that because Cisco had been watching Egenera's activities, Cisco saw Egenera's press release and gained knowledge of the '430 Patent. A reasonable jury could also infer that Cisco gained pre-suit knowledge of the

'430 Patent (or possessed the requisite willful blindness) from these facts alone. *See Mformation Tech.*, 2010 WL 11484745, at *12-13 (denying summary judgment of no willfulness where an accused infringer knew of a patent and its application through knowledge of its employees, technology discussions between the parties and the patentee was a "single-product company focused solely on its patented" product).

### 4. Cisco purchased an Egenera BladeFrame system and used it in a manner inconsistent with normal use.

In March 2004, Cisco purchased an Egenera BladeFrame with PAN Manager. SOF#58. Two months later, Egenera received a service ticket from Cisco. SOF#59. In Egenera's attempt to resolve the issue, Egenera discovered that "one of the switches had failed about a month ago, but was never reported." SOF#60; Ex. 65. Egenera determined it needed to "study these C-Blades to see if [Cisco is] screwing with them" and why Cisco was using the BladeFrame in such a way that was inconsistent with normal use. SOF#60; Ex. 65. Cisco received notification of the release of Egenera's new versions of PAN Manager that included instructions on how to download the release. SOF#61. A reasonable jury could infer that Cisco's abnormal use of the BladeFrame, which with the required PAN Manager embodies the '430 Patent, was an attempt to reverse engineer the product. A reasonable jury could infer that Cisco gained pre-suit knowledge of the '430 Patent (or possessed the requisite willful blindness) from these facts alone.

### 5. Cisco and the U.S. Patent and Trademark Office cited the '430 Patent during prosecution of four Cisco patents.

The '430 Patent was cited four times during prosecution of four Cisco patents over a period of around four months. SOF#62-63. For one of Cisco's patents, the '430 Patent was cited *by Cisco*. SOF#63. Cisco argues that the citation of the '430 Patent during prosecution of its patents does not establish that Cisco had knowledge of the '430 Patent, but Cisco must have known about the '430 Patent to cite it to the USPTO and surely would not have ignored it

16

through four different communications with the USPTO. Dkt. 146 at 19. And even if Cisco kept its employees in the dark and only let its prosecution counsel know, Cisco's prosecution counsel acted with Cisco's authority when it cited (and when the USPTO pointed it to) the '430 Patent before this lawsuit. Under basic black letter agency law, Cisco is charged with knowledge of its agents. *Kellogg Brown & Root Servs. v. U.S.*, 728 F.3d 1348, 1369 (Fed. Cir. 2013) ("Corporations act through their employees; the general rule is that an agent's knowledge is imputed to the principal when employees are acting with the scope of their authority or employment, absent special circumstances."). A reasonable jury could also infer that Cisco gained pre-suit knowledge of the '430 Patent (or possessed the requisite willful blindness) from these facts alone.

\* \* \*

A mountain of evidence exists of Cisco's knowledge of Egenera and its patented technology. After a long history of meetings and discussions about Egenera's technology, Cisco hired dozens of former Egenera employees and used some of those employees to develop its competing UCS and lure away Egenera's customers. Cisco also kept an eye on Egenera's activities and cited the '430 Patent in prosecution of one of its own patents. In addition, Cisco bought a BladeFrame and used it in a peculiar manner that suggested reverse engineering. Individually or combined, this evidence could support a reasonable jury's finding that Cisco had pre-suit knowledge of (or possessed the requisite willful blindness to) the '430 Patent.

**D.      Cisco Did Not Have a Good Faith Belief that it Did Not Infringe the '430 Patent nor that the '430 Patent was Invalid, Precluding Summary Judgment of No Post-Suit Damages for Indirect and Willful Infringement.**

Cisco alleges that "all of the evidence suggests that Cisco did not believe that its UCS products infringed" based on allegedly "unrebutted testimony." Dkt. 146 at 20. Not true. As an initial matter, Egenera served infringement contentions informing Cisco of its infringement.

SOF#64. "[A] reasonable jury could conclude that [Cisco] possessed the requisite 'knowledge of the patent in suit and knowledge of patent infringement' (or possessed the requisite willful blindness) after it received [Egenera's] infringement contentions." *Genband v. Metaswitch*, No. 2:14-cv-33, 2016 U.S. Dist. LEXIS 37946, at \*14-\*15 (E.D. Tex. Jan. 6, 2016).

Cisco identified five people as having technical knowledge regarding UCS. SOF#65. Egenera deposed all five individuals yet none of these individuals reviewed Egenera's infringement contentions, a basic pre-requisite for a proper non-infringement analysis if Cisco did not intend to be willfully blind. SOF#66. If Cisco intended to actually form a good faith belief, an infringement analysis requires comparing properly construed claims to the accused product, not the embodying product to the accused product. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1572 (Fed. Cir. 1994). Yet, the five people that had supposedly had technical knowledge largely discussed differences between the competing UCS and Bladeframe products. SOF#66; Ex. 117 (Dvorkin Tr.) at 115:15-117:12, 118:7-14, 120:23-121:8, 122:10-123:3, 125:12-19; Ex. 21 (Jayakrishnan Tr.) at 234:8-235:7, 235:12-21, 237:1-7, 237:13-238:19; Ex. 113 (Sethi Tr.) at 296:4-17, 296:24-297:22, 298:2-300:23; Ex. 3 (Clark Tr.) at 302:9-303:10; Ex. 118 (Vaidya Tr.) at 32:5-18, 32:21-33:11, 34:11-22, 35:21-36:8. And for some, they knew the differences between UCS and Egenera's BladeFrame product from their time at Egenera while the others knew from competitive analyses comparing the products by Cisco. *Id.* None of them identified the arguments Cisco makes in its non-infringement summary judgment that supposedly demonstrate its good faith belief. *Id.* And none had formed these opinions before this lawsuit, much less by the time the infringing UCS products were released. *Id.*

Cisco relies heavily on Mr. Dvorkin but: (1) he had not seen the Court's *Markman* order until the day before his deposition; (2) he did not apply the Court's *Markman* order in his

analysis (stating, for instance, that "we did not connect control nodes to CPUs" despite the Court's Order noting that the claims "impose no limitation that the connection be established directly"); and (3) he had not reviewed Egenera's infringement contentions. SOF#67; Ex. 117 (Dvorkin Mar. 1, 2018 Tr.) at 117:1-9, 117:10-12, 118:7-13, 120:23-121:8. Again, further undermining Cisco's contentions on its "belief" is that Mr. Dvorkin's uninformed "opinion" did not include the non-infringement arguments Cisco makes on summary judgment. Dkt. 85 at 8-9; Ex. 117 (Dvorkin Mar. 1, 2018 Tr.) at 122:10-123:3 (not mentioning specification of computer processors as non-infringement reason), 125:12-19 (suggesting no emulation at all, which Cisco has not argued in its summary judgment motion).

Contrary to Cisco's assertions, the "mere fact that [Cisco] has raised and maintained non-infringement defenses in this litigation does not suffice to entitle it to summary judgment." *Genband*, 2016 U.S. Dist. LEXIS 37946, at \*13-\*14. Cisco could not maintain a good faith belief that the '430 Patent is invalid in this litigation. The USPTO denied Cisco's petition for *inter partes* review using a lower preponderance of evidence invalidity standard and broader claim construction standard. SOF#68; *Kolcraft Enters. v. Chicco USA, Inc.*, No. 09 C 03339, 2018 U.S. Dist. LEXIS 112943, at \*11-12 (N.D. Ill. July 6, 2018) ("Artsana challenged the validity of the patent in an inter partes reexamination proceeding, . . . [which is a] factor[] that a jury might find indicate good faith on Artsana's part. But a jury could also find that these were merely post-hoc litigation strategies to try to avoid enhanced damages." (citation omitted)). And Cisco also alleges it has non-infringing alternatives to the '430 Patent, but it presented no evidence that it has implemented any of those alternatives in its motion. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017) (denying a motion for

judgment as a matter of law that there was no willful infringement where accused infringer had put forth alleged non-infringing alternatives but had not implemented them).

* * *

Knowledge, intent, and willfulness are classic fact issues for a jury to weigh and decide. A reasonable jury could conclude based on the evidence that Cisco had knowledge of the '430 Patent and lacked a good faith belief of noninfringement. Egenera respectfully requests that the Court deny Cisco's motion for summary judgment on pre-suit and post-suit indirect infringement and willful infringement.

Dated: August 30, 2018     Respectfully submitted,

          By: */s/ John B. Campbell*_____
          Mike McKool *(admitted pro hac vice)*
          TX Bar No. 13732100
          mmckool@mckoolsmith.com
          Christopher T. Bovenkamp *(admitted pro hac vice)*
          TX Bar No. 24006877
          cbovenkamp@mckoolsmith.com
          Avery R. Williams *(admitted pro hac vice)*
          TX Bar No. 24075282
          awilliams@mckoolsmith.com
          **MCKOOL SMITH, P.C.**
          300 Crescent Court, Suite 1500
          Dallas, TX 75201
          Telephone: (214) 978-4000
          Fax: (214) 978-4044

          John B. Campbell *(admitted pro hac vice)*
          TX Bar No. 24036314
          jcampbell@mckoolsmith.com
          James. E. Quigley *(admitted pro hac vice)*
          TX Bar No. 24075810
          jquigley@mckoolsmith.com
          Jordan Z. Carson *(admitted pro hac vice)*
          Texas State Bar No. 24101599
          jcarson@mckoolsmith.com
          **MCKOOL SMITH, P.C.**
          300 W. 6th Street, Suite 1700
          Austin, TX 78701
          Telephone: (512) 692-8700
          Fax: (512) 692-8744

          David L. Evans (BBO #156695)
          devans@murphyking.com
          Steven M. Veenema (BBO #672097)
          sveenema@murphyking.com
          **MURPHY & KING, P.C.**
          One Beacon Street, 21st Fl.
          Boston, Massachusetts 02108-3107
          Telephone: (617) 423-0400
          Fax: (617) 423-0498

          COUNSEL FOR PLAINTIFF
          EGENERA, INC.

21

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of this document filed through the Electronic Case Filing ("ECF") system on August 30, 2018, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


*/s/ James E. Quigley*
James E. Quigley

1